UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CRAIG CARLSON, et al., <br> Plaintiffs, <br> v. <br> ROCK CLAPPER, et al., <br> Defendants. | Case No.18-cv-07195-VKD <br><br> **ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND** <br> Re: Dkt. No. 17 |

Plaintiffs Craig Carlson and Carlson Produce, LLC ("Carlson Produce") filed this action against defendants Rock Clapper and ScanX, Inc. ("ScanX") for: (1) breach of contract, (2) breach of the duty of good faith and fair dealing, (3) fraud, (4) promissory estoppel, and (5) quantum meruit/unjust enrichment. Dkt. No. 1. Pursuant to Rule 12(b)(6) and Rule 9 of the Federal Rules of Civil Procedure, defendants move to dismiss (1) all of Mr. Carlson's claims against all defendants for lack of standing, (2) plaintiffs' claim for fraud against all defendants, and (3) all claims against Mr. Clapper in his personal capacity. Dkt. No. 17. The Court heard oral argument on defendants' motion on February 26, 2019. Dkt. No. 24.

This Court has jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332.[1] Dkt. No. 1 ¶¶ 2-7. Having considered the parties' moving papers and arguments made at the hearing, the Court denies defendants' request for judicial notice as moot and grants defendants' motion to dismiss all claims brought by Mr. Carlson in his individual capacity, claims 1, 2, 4, and 5 against Mr. Clapper in his individual capacity, and a portion of claim 3 as to both defendants. The Court

---

[1] All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 11, 16.

will afford plaintiffs leave to amend as discussed below.

## I. BACKGROUND

Mr. Carlson is a resident of Chicago, Illinois and the sole member of Carlson Produce, a limited liability company organized under the laws of Illinois with its principal place of business in Illinois. Dkt. No. 1 ¶¶ 2-3, 15. Mr. Carlson specializes in creating and managing high performance hardware and software products for companies in the produce supply industry. *Id.* ¶ 12.

Mr. Clapper is a California resident and the President, Chairman, and controlling shareholder of ScanX, a corporation organized under Delaware law with its principal place of business in California. *Id.* ¶¶ 4-6. ScanX develops instruments for "real-time" detection of bacteria and chemicals in food. *Id.* ¶ 11.

On July 1, 2016, ScanX and Carlson Produce entered into a four-year Services Agreement.[2] *Id.* ¶ 14, Exh. 1. The Services Agreement identifies Carlson Produce as "Consultant" and ScanX as "Company." *Id.*, Exh. 1 at 1. Pursuant to this agreement, "Consultant will be taking the title of President of Sales and Marketing for ScanX Inc. Responsibilities include all revenue generation processes. In this role he[3] is accountable for driving better integration and alignment between all revenue related functions, including marketing, sales, customer support, pricing, and revenue management." *Id.* In exchange for those services, the Consultant was to receive "compensation of $210,000 per year for consulting activities, a 35% of salary annual bonus. . . . In addition, Consultant will receive 5.5% of ScanX stock to vest over 4 years. . . . Payment for consulting activities is due at the end of each 30 day period and the bonus is due 30 days after the year is complete." *Id.* Additionally, "[t]he Company shall reimburse travel costs, lodging, transportation and other preapproved expenses in relation to services provided by Consultant to Company. Payment is due fifteen (15) days from the date Company receives

---

[2] The Services Agreement is between ScanX and "Carlson Produce Consulting LLC." *Id.*, Exh. 1 at 1. The parties do not dispute that "Carlson Produce Consulting LLC" is the same entity as plaintiff Carlson Produce.

[3] The Services Agreement does not specify who "he" is.

1    invoice." *Id.* at 2. The Services Agreement was signed by Mr. Clapper for ScanX and by Mr.
2    Carlson as a "Member" for Carlson Produce. *Id.*

Plaintiffs say defendants paid for the first two months of services provided under the Services Agreement but failed to pay thereafter, despite plaintiffs' full performance. *Id.* ¶¶ 23-24. On multiple occasions, plaintiffs say that defendants represented that investor funding would be used in part to pay plaintiffs what they were owed, but that defendants never did so. *Id.* ¶¶ 25-31.

Plaintiffs filed this action on November 28, 2018. Dkt. No. 1.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. If matters outside the pleadings are considered, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, a court may consider matters that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank, N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)). Documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when

deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 889 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). A court may take notice of public records, but not of disputed facts stated in public records. *Khoja*, 899 F.3d at 999 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

### B. Rule 9

Rule 9(b) requires that allegations of fraud be stated with particularity. Specifically, averments of fraud must "be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). When an "entire claim within a complaint[ ] is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the . . . claim." *Id.* at 1107. A motion to dismiss a complaint under Rule 9(b) for failure to plead with particularity is "the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

## III. DISCUSSION

### A. Standing

#### 1. Carlson Produce

Defendants initially argue that Carlson Produce cannot maintain this suit under Rule 17(b) and Cal. Corp. Code § 17708.07(a) because Carlson Produce is not registered to do business in California. Dkt. No. 17 at 3–4. Defendants ask the Court to take judicial notice of the fact that Carlson Produce is not registered with the California Secretary of State. Dkt. No. 17-1. Defendants have since withdrawn this argument. Dkt. No. 21 at 2. The Court therefore does not reach this argument and denies defendants' related request for judicial notice as moot.

#### 2. Carlson

Defendants argue that Mr. Carlson lacks standing to prosecute this action because he is not a party to the Services Agreement and may not sue on Carlson Produce's behalf. Dkt. No. 17 at 4–5. Mr. Carlson argues that he was an employee of Mr. Clapper and ScanX, and therefore has standing to prosecute claims arising from that employment relationship on his own behalf.

4

In diversity actions such as this one, the relevant state law determines whether the plaintiff is the proper party to maintain the action. *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093–94 (9th Cir. 2004). The Court therefore turns to California law to determine whether Mr. Carlson has standing.

To the extent that Mr. Carlson's claims are incidental to injury to Carlson Produce's interests, he does not have individual standing to sue on such claims. *PacLink Commc'ns Int'l, Inc. v. Superior Court*, 90 Cal. App. 4th 958, 964–65 (2011) (holding that limited liability company members could not maintain action based on improper deprivation of company's assets, because their individual injury was merely incidental to the company's injury); *Hilliard v. Harbour*, 12 Cal. App. 5th 1006, 1012 (2017) ("[A]n individual cause of action exists only if the damages were not *incidental* to an injury to the corporation.") (quoting *Nelson v. Anderson*, 72 Cal. App. 4th 111, 124 (1999)) (emphasis original); *see also Sinclair v. Fox Hollow of Turlock Owners Ass'n*, No. 1:03-cv-05439-OWW-DLB, 2011 WL 2433289, at *3–4 (E.D. Cal. June 13, 2011) ("Members of an LLC do not have an ownership interest in property to which the LLC holds title. Where the gravamen of the complaint is injury to an LLC's property, the right of action lies with the LLC, not individual members of the LLC. Members of an LLC lack individual standing to prosecute claims for injury to the LLC's property.") (internal citations omitted). Here, the gravamen of the complaint is injury to Carlson Produce: the complaint asserts that defendants failed to pay the consideration owed to Carlson Produce under the terms of the Services Agreement and/or obtained continued performance of services under that agreement by making false promises. As currently pled, Mr. Carlson's claims do not arise from circumstances independent of his status as a member of Carlson Produce. But for his member status, Mr. Carlson would not have been injured by defendants' conduct. *See Hilliard*, 12 Cal. App. 5th at 1015 (noting that plaintiff created his company as a limited liability company to limit his liability, and that no policy reason existed "to permit him to enjoy the benefits of that limitation without accepting the concomitant burdens it entails").

To the extent Mr. Carlson sues to enforce the Services Agreement, he likewise lacks standing to do so. Mr. Carlson is not a party to the Services Agreement and he does not contend

5

he is a third-party beneficiary of that contract. "Someone who is not a party to the contract has no standing to enforce the contract or to recover extra-contract damages for wrongful withholding of benefits to the contracting party." *Hatchwell v. Blue Shield of Cal.*, 198 Cal. App. 3d 1027, 1034 (1988). A plaintiff may only sue to enforce a contract as a third-party beneficiary if that contract was made expressly for his benefit and has not been rescinded. Cal. Civ. Code § 1559. Here, the Services Agreement does not appear on its face to have been made expressly for Mr. Carlson's benefit. Because Mr. Carlson's benefit under the Services Agreement and his injury resulting from breach of the Services Agreement is merely incidental to his status as a member of Carlson Produce, he cannot sue under a third-party beneficiary theory. *Prouty v. Gores Tech. Grp.*, 121 Cal. App. 4th 1225, 1232–33 (2004) ("The word 'expressly,' by judicial interpretation has now come to mean merely the negative of 'incidentally.' . . . A third party who is only incidentally benefited by performance of a contract is not entitled to enforce it. The fact that he is incidentally named in the contract, or that the contract, if carried out according to its terms, would inure to his benefit, is not sufficient to entitle him to demand its fulfillment.") (internal quotation marks and citations omitted).

Accordingly, Mr. Carlson lacks standing to sue on the claims currently pled in the complaint against either of the defendants.

Mr. Carlson contends that he has standing to sue in his individual capacity under an alternative theory: he asserts that he was an employee of defendants because ScanX and/or Mr. Clapper controlled or had the right to control the manner and means of the work he performed for them. Dkt. No. 18 at 7–8 (citing *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341 (1989); *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903 (2018)).

The complaint does not currently state a claim for relief arising out of a purported employment relationship separate from the claim for breach of the Services Agreement to which Mr. Carlson is not a party. Mr. Carlson argues that he could plead facts sufficient to state a claim under this alternative theory if given leave to amend his complaint. Because it does not appear that amendment would be futile, the Court will give Mr. Carlson an opportunity to amend the complaint to adequately plead standing for claims 1-5 against defendants. *Manzarek v. St. Paul*

6

*Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (holding that a court granting a motion to dismiss should permit leave to amend unless it would be clearly futile).

### B. Rule 9 (Claim 3 Against Clapper and ScanX)

#### 1. Pleading facts with particularity

Defendants contend that the complaint fails to plead fraud with the requisite particularity. Dkt. No. 17 at 5–6. To satisfy the pleading standard under Rule 9, a plaintiff asserting a claim of fraud must plead "'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106. The complaint pleads three examples of what plaintiffs contend were fraudulent promises on defendants' part in paragraphs 26, 27, and 28.

Paragraph 26 states:

> In December of 2017, Rock Clapper, on behalf of the Defendants, made numerous representations regarding an impending investment from China that would be used, in part, to pay Carlson's outstanding invoices. On December 22, 2017, Mr. Clapper, on behalf of the Defendants, represented that the investor would "wire funds from hong kong to our bank in the U.S." On December 28, 2017, in response to Carlson's question "When will we be receiving our updates on the payment of our overdue payments and the corresponding wire transfer?" Mr. Clapper, on behalf of the Defendants, provided further assurance stating that they received "Confirmation last night/morning PDT." As opposed to these explicit assurances by Defendants no payments were made to Carlson. Defendants had no intention of making these payments and, in fact, failed to make the payments. The representations were false when made and was made for the purpose of inducing Carlson's reliance. The representations did, in fact, induce Carlson's reliance to his detriment and Carlson suffered harm as a result of his reliance on the false promises made by Defendants.

Dkt. No. 1 ¶ 26. The allegations in this paragraph include what the misrepresentation was, who made it, and when it was made, but they do not describe where and how the misrepresentation was made.

Paragraph 27 states:

> In January of 2018, Mr. Clapper, on behalf of the Defendants, represented that new investment was secured from an additional investor group. Mr. Clapper, on behalf of the Defendants, promised that $100,000 would be received in the month of January and that

7

> the money would be used, in part, to pay Carlson's outstanding invoices. On January 18, 2017, Mr. Clapper on behalf of the Defendants acknowledged the outstanding obligation to Carlson and assured Carlson that the money would be used to "take down a percentage of outstanding debt for you." As opposed to this promise by Defendants no payments were made. Defendants had no intention of making these payments and, in fact, failed to make the payments. The representation was false when made and was made for the purpose of inducing Carlson's reliance. The representation did, in fact, induce Carlson's reliance to his detriment and Carlson suffered harm as a result of his reliance on the false promise made by Defendants.

*Id.* ¶ 27. This paragraph also contains the who, when, and what, but the where and how are missing.

Paragraph 28 reads:

> In late January of 2018, Mr. Clapper on behalf of the Defendants provided further promises of payment in a telephone conversation with Carlson. Carlson followed this with an email "Confirming our discussion, that the short term plan is to pay me $100K by this Friday and as a minimum I will receive a minimum payment of $33K. (The $100K Rocky investment times 1/3)." This representation was also false. As opposed to this promise by Clapper on behalf of the Defendants no payments were made to Carlson. In fact, Clapper replied to Carlson's email stating "Get to work and quit screwing around." Defendants had no intention of making these payments and, in fact, failed to make the payments. The representations were false when made and was made for the purpose of inducing Carlson's reliance. The representations did, in fact, induce Carlson's reliance to his detriment and Carlson suffered harm as a result of his reliance on the false promise made by Defendants.

*Id.* ¶ 28. This paragraph pleads that Mr. Clapper made promises of payment in a telephone conversation in January 2018. When Mr. Carlson attempted to confirm those promises over email, Mr. Clapper responded without addressing his previous promises. This paragraph satisfies Rule 9 and provides defendants with adequate notice of what plaintiffs contend constitutes fraud.

Because paragraph 28 sufficiently pleads fraud, the Court does not dismiss plaintiffs' fraud claim. However, paragraphs 26 and 27 do not plead fraud with the requisite particularity. Plaintiffs argue that they could plead the circumstances in paragraphs 26 and 27 with greater particularity if given leave to do so. Because it does not appear that amendment would be futile,

8

the Court will give plaintiffs an opportunity to amend claim 3 to add facts pleading fraud with particularity. *Manzarek*, 519 F.3d at 1031.

### 2. **Pleading intent**

A claim for promissory fraud requires (1) "a promise clear and unambiguous in its terms" (2) that is false; (3) "that the promisor know of the falsity when making the promise;" (4) "reliance by the party to whom the promise is made" (5) that is "both reasonable and foreseeable;" and (6) resulting injury. *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 225, 231 (2011). With respect to the third element, the plaintiff must show that the defendant had the intent to induce the plaintiff to alter his position to his detriment through a promise made without any intention of performing that promise. Cal. Civ. Code §§ 1709, 1710(4).

Defendants argue that the complaint fails to plead any facts showing that ScanX or Mr. Clapper had a fraudulent intent when Mr. Clapper made the statements described in paragraphs 26-28 of the complaint. "To establish a claim of fraudulent inducement, one must show that the defendant did not intend to honor its contractual promises when they were made. . . . [A]lthough . . . fraudulent intent is often established by circumstantial evidence, something more than nonperformance is required to prove the defendant's intent not to perform his promise." *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 118, 1131 (2012) (internal quotation marks and citations omitted).

As discussed above, the allegations of paragraphs 26 and 27 do not satisfy the pleading requirement under Rule 9. However, fraudulent intent may be inferred from the allegations in paragraph 28. Paragraph 28 states that Mr. Carlson emailed Mr. Clapper to confirm an earlier telephone discussion in which ScanX agreed to pay plaintiffs at least $33,000 by a certain date. Dkt. No. 1 ¶ 28. In reply to the email, Mr. Clapper stated, "Get to work and quit screwing around." *Id.* It may be inferred from this dismissive response that Mr. Clapper intended to induce plaintiffs to continue to perform under the Services Agreement but did not intend to pay the $33,000 (or any money). Plaintiffs contend that these communications constitute conduct by defendants beyond mere nonperformance of the Services Agreement sufficient to support an inference of fraudulent intent.

9

Defendants argue in their reply that the allegations in paragraphs 26-28 reflect statements of opinion by Mr. Clapper about future events and are not actionable. Dkt. No. 21 at 3–4 (citing *Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal. App. 4th 303, 308 (2000)). A plain reading of paragraphs 26-28 does not support defendants' interpretation. Although paragraph 26 states that Mr. Clapper "made numerous representations regarding a pending investment from China that would be used, in part, to pay Carlson's outstanding invoices," it further states that Mr. Clapper told Mr. Carlson that he received "confirmation last night/this morning PDT" that the promised funding had already been wired to ScanX's bank account. This is not a statement of opinion about a future event, but rather an assertion that the event (i.e., the transfer of funds) had already occurred. Likewise, paragraph 27 states that Clapper "represented that new investment was secured from an additional investor group" and that "$100,000 would be received in the month of January and that the money would be used, in part, to pay Carlson's outstanding invoices." These statements are factual in nature—the "new investment was secured" and ScanX simply needed to receive the funds. Finally, paragraph 28 alleges that Mr. Carlson and Mr. Clapper had a telephone conversation in which Mr. Clapper promised that ScanX would make a payment of at least $33,000 "by this Friday."

Even if the statements in paragraphs 26-28 are construed as opinions, opinions may still be actionable if a party possesses "superior knowledge or special information" regarding the subject of the representation, and the other party reasonably relies on that superior knowledge or information. *See Neu-Visions Sports*, 86 Cal. App. 4th at 308 (internal quotations omitted). The complaint is silent regarding plaintiffs' knowledge of or participation in negotiations with potential investors. Dkt. No. 1-1 at 1. However, the allegations of paragraphs 26 and 27 suggest that Mr. Clapper had that information. If Mr. Clapper had superior knowledge regarding ScanX's investment funding, even his "opinions" about plaintiffs receiving payment after ScanX received funding might well be actionable.

Accordingly, reading all inferences in the complaint in plaintiffs' favor, the Court finds that the complaint sufficiently alleges an intent to defraud.

### C. Rule 12(b)(6) (Claims 1-5 Against Clapper)

Defendants identify three theories of individual liability for Mr. Clapper that they say plaintiffs advance in the complaint: (1) he personally participated in a fraudulent scheme to reap the benefits of Carlson Produce's work without paying what was owed under the Services Agreement, (2) he was a co-employer of Mr. Carlson, and (3) ScanX is Mr. Clapper's alter ego. Dkt. No. 17 at 6. Defendants argue that plaintiffs have failed to state a claim against Mr. Clapper under any of these theories.

#### 1. Personal participation in fraud

Defendants' sole argument for why the complaint fails to state a claim against Mr. Clapper for fraud is that plaintiffs have failed to state a claim for fraud *as to any defendant*. Dkt. No. 17 at 6. They do not argue that Mr. Clapper may not be held personally liable if plaintiffs otherwise state a claim for fraud. As discussed above, plaintiffs have stated a claim for fraud with respect to paragraph 28, but not with respect to paragraphs 26 and 27. *See supra* Section III.B.

#### 2. Co-employer

Defendants contend that corporate directors and officers, like Mr. Clapper, cannot be held personally liable for the corporation's failure to pay contractually owed compensation.[4] Dkt. No. 17 at 6–7. Plaintiffs argue that the complaint pleads the existence of a common law employment relationship between Mr. Clapper and Mr. Carlson that subjects Mr. Clapper to personal liability, citing *Martinez v. Combs*, 49 Cal. 4th 35 (2010). Dkt. No. 18 at 10; *see also* Dkt. No. 1 ¶ 18 ("Clapper had the sole power to hire and fire Carlson, supervised and controlled his work schedule and set the conditions of Carlson's employment, determined the rate and method of payment to Carlson, and maintains Carlson's employment records. Clapper is liable personally as a co-employer of Carlson.").

The Court has already concluded that Mr. Carlson fails to state a claim for relief as an employee of Mr. Clapper or ScanX independent of Carlson Produce's claim for breach of the Services Agreement to which Mr. Carlson is not a party. *See supra* Section III.A.2. Accordingly,

---

[4] Defendants do not make the same argument with respect to plaintiffs' fraud claim; rather, they contend that plaintiffs fail to plead fraud with the particularity required by Rule 9.

Mr. Clapper cannot be individually liable as a "co-employer" when no employment relationship has been pled.

In any event, plaintiffs misread *Martinez*. In that case, the California Supreme Court held that the Industrial Welfare Commission's wage order definition of "to employ" means (a) to exercise control over the wages, hours or working conditions, (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship. 49 Cal. 4th at 64. That holding was made in the context of a claim for unpaid minimum wages pursuant to Cal. Lab. Code § 1194. *Id.* at 62–67. Plaintiffs have not brought a claim under section 1194 or any other California state labor law, and therefore *Martinez* is of little guidance here. Moreover, plaintiffs do not plead that Mr. Clapper acted on his own behalf outside the scope of his role as an agent for ScanX, and therefore he cannot be personally liable for ScanX's alleged failure to pay wages. *Reynolds v. Bement*, 36 Cal. 4th 1075, 1087 (2005) (internal citations omitted), *abrogated on other grounds by Martinez*, 49 Cal. 4th 35 (2010).

As discussed above, Mr. Carlson has failed to adequately allege individual standing under an employment theory. *See supra* Section III.A.2. Consequently, the complaint fails to state a claim against Mr. Clapper individually as a co-employer.

### 3. Alter ego

Under California law, a member of a limited liability company—like a corporate shareholder—is not personally liable for the debts, legal liability, or obligations of the company unless liability attaches under an alter ego theory. Cal. Corp. Code § 17703.04. Defendants argue that plaintiffs have failed to plead facts sufficient to support an alter ego theory of liability for Mr. Clapper for any claim for relief.

"An alter ego defendant has no separate primary liability to the plaintiff. Rather, plaintiff's claim against the alter ego defendant is identical with that claimed by plaintiff against the already-named defendant. A claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation where the corporate form is being used by

the individuals to escape personal liability, sanction a fraud, or promote injustice." *Hennessey's Tavern, Inc. v. American Air Filter Co.*, 204 Cal. App. 3d 1351, 1358–1359 (1988). In applying the alter ego doctrine, the issue is not whether the corporation is the alter ego of its shareholders for all purposes or whether the corporation was organized for the purpose of defrauding the plaintiff, but rather whether justice and equity are best accomplished in a particular case, and fraud defeated, by disregarding the separate nature of the corporate form as to the claims in that case. *Mesler v. Bragg Mgmt. Co*, 39 Cal. 3d 290, 300 (1985).

Alter ego liability is recognized "where two conditions are met: [f]irst, where there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; and, second, where adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice." *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (internal quotation marks and citation omitted). Factors suggesting an alter ego relationship include "the use of the same office or business location; . . . the use of a corporation as a mere shell, instrumentality, or conduit for a single venture or the business of an individual or another corporation . . . ; [and] [the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability . . . ." *Associated Vendors, Inc. v. Oakland Meat Co., Inc.,* 210 Cal. App. 2d 825, 838–40 (1962) (internal quotations omitted).

Defendants' contention that *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, LLP*, 69 Cal. App. 4th 223 (1999) requires that a complaint "must [plead] acts committed such as commingling of funds, failure to follow corporate formalities, the diversion of assets and the like" reflects a misreading of the applicable case law. Dkt. No. 21 at 4. *Morrison Knudsen* described the factors listed in *Associated Vendors, Inc. v. Oakland Meat Co.*, but both courts acknowledged that "the conditions under which the corporate entity may be disregarded, or the corporation be regarded as the alter ego of the stockholders, necessarily vary according to the circumstances in each case inasmuch as the doctrine is essentially an equitable one . . . . Only general rules may be laid down for guidance." *Morrison Knudsen*, 69 Cal. App. 4th at 250 (quoting *Associated Vendors*, 210 Cal. App. 2d at 837–38). Neither case stands for the proposition that a plaintiff *must*

plead a commingling of funds, a failure to follow corporate formalities, or the diversion of assets in order to state a claim under an alter ego theory. But a plaintiff who seeks to plead alter ego liability must plead more facts than those which plaintiffs have pled here.

Here, the complaint alleges that Mr. Clapper is ScanX's President, Chairman of the Board, and controlling shareholder, that he maintained complete and exclusive control over ScanX, and that he runs ScanX as his alter ego. Dkt. No. 1 ¶¶ 5, 16. Those allegations, however, are quite general and do not include facts showing how Mr. Clapper controls ScanX and how he runs it as his alter ego. The allegations that Mr. Clapper is an officer of ScanX and ScanX's registered agent for service of in California, and that he and ScanX share the same address as listed on the California Secretary of State's website are insufficient to support claims against Mr. Clapper under an alter ego theory of liability. *Id.* ¶ 6; *MH Pillars Ltd. v. Realini*, No. 15-cv-1383-PJH, 2017 WL 916414, at *11–12 (N.D. Cal. Mar. 8, 2017) (granting motion to dismiss where complaint alleged same business address and agent for service of process, but failed to allege, among other things, a unity of interests).

At the hearing, plaintiffs represented that there were additional facts that they could plead to support an alter ego theory if given leave to amend. The Court therefore grants defendants' motion to dismiss claims 1, 2, 4, and 5 against Mr. Clapper in his individual capacity with leave to amend. *Manzarek*, 519 F.3d at 1031. In their amended complaint, plaintiffs should make clear their alter ego theory of liability in the context of each claim.

## IV. CONCLUSION

For the foregoing reasons, the Court denies defendants' request for judicial notice as moot and grants defendants' motion to dismiss with leave to amend as described above. Plaintiffs may file an amended complaint to address the deficiencies identified above no later than **March 20, 2019**.

**IT IS SO ORDERED.**

Dated: March 6, 2019

VIRGINIA K. DEMARCHI
United States Magistrate Judge

14