UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CRAIG CARLSON, et al., | Case No.18-cv-07195-VKD |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS** |
| ROCK CLAPPER, et al., | Re: Dkt. No. 28 |
| Defendants. | |

With the Court's leave, on March 14, 2019 plaintiffs Craig Carlson and Carlson Produce, LLC ("Carlson Produce") filed a first amended complaint ("FAC") against defendants Rock Clapper and ScanX, Inc. ("ScanX") for breach of contract, breach of the duty of good faith and fair dealing, fraud, promissory estoppel, and quantum meruit/unjust enrichment. Dkt. No. 27. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants move to dismiss (1) all of Mr. Carlson's claims, (2) plaintiffs' claim for breach of the duty of good faith and fair dealing against all defendants, and (3) plaintiffs' claims against Mr. Clapper in his personal capacity, except for claim 3 for fraud. Dkt. No. 28. This Court has jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332.[1] Dkt. No. 17 ¶¶ 4-6, 8-9.

The Court heard oral argument on defendants' motion on May 14, 2019. Dkt. No. 42. Having considered the parties' moving papers and arguments made at the hearing, the Court denies the parties' requests for judicial notice and grants defendants' motion to dismiss.

---

[1] All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 11, 16.

## I. BACKGROUND

Mr. Carlson is a resident of Chicago, Illinois and the sole member of Carlson Produce, a limited liability company organized under the laws of Illinois with its principal place of business in Illinois. Dkt. No. 27 ¶¶ 4-5, 17. Mr. Carlson specializes in creating and managing high performance hardware and software products for companies in the produce supply industry. *Id.* ¶ 14.

Mr. Clapper is a California resident and the President, Chairman, and controlling shareholder of ScanX, a corporation organized under Delaware law with its principal place of business in California. *Id.* ¶¶ 6-8. ScanX develops instruments for "real-time" detection of bacteria and chemicals in food. *Id.* ¶ 13.

On July 1, 2016, ScanX and Carlson Produce entered into a four-year Services Agreement.[2,3] *Id.* ¶ 16; Dkt. No. 1, Ex. 1. The Services Agreement identifies Carlson Produce as "Consultant" and ScanX as "Company." Dkt. No. 1, Ex. 1 at 1. Pursuant to this agreement, "Consultant will be taking the title of President of Sales and Marketing for ScanX Inc. Responsibilities include all revenue generation processes. In this role he[4] is accountable for driving better integration and alignment between all revenue related functions, including marketing, sales, customer support, pricing, and revenue management." *Id.*

In exchange for those services, the Consultant was to receive "compensation of $210,000 per year for consulting activities, a 35% of salary annual bonus. . . . In addition, Consultant will receive 5.5% of ScanX stock to vest over 4 years. . . . Payment for consulting activities is due at the end of each 30 day period and the bonus is due 30 days after the year is complete." *Id.*

---

[2] Although appended to the original complaint, the Services Agreement is not appended to the FAC, which is the operative complaint subject to defendants' motion to dismiss. Although the Court generally may not consider matters outside the pleadings when ruling on a motion to dismiss, *see* Fed. R. Civ. P. 12(d), the Court may consider the Services Agreement as incorporated by reference in the complaint. *Khoja v. Orexigen Therapeutics*, 889 F.3d 988, 998 (9th Cir. 2018); Dkt. No. 27 ¶ 16 (describing "Services Agreement" "[a]ttached here to as Exhibit 1").

[3] The Services Agreement is between ScanX and "Carlson Produce Consulting LLC." Dkt. No. 1, Ex. 1 at 1. The parties do not dispute that "Carlson Produce Consulting LLC" is the same entity as plaintiff Carlson Produce.

[4] The Services Agreement does not specify who "he" is.

1  Additionally, "[t]he Company shall reimburse travel costs, lodging, transportation and other preapproved expenses in relation to services provided by Consultant to Company. Payment is due fifteen (15) days from the date Company receives invoice." *Id.* at 2. The Services Agreement was signed by Mr. Clapper for ScanX and by Mr. Carlson as a "Member" for Carlson Produce. *Id.*

The Services Agreement contains an integration clause. *Id.* It also provides that "all questions concerning this Agreement, including the validity, capacity, of parties, effect[,] interpretation, and performance shall be governed by the laws of Santa Clara County in the State of California." *Id.*

Plaintiffs say defendants paid for the first two months of services provided under the Services Agreement but failed to pay thereafter, despite plaintiffs' full performance. Dkt. No. 27 ¶¶ 24-25. On multiple occasions, plaintiffs say that defendants represented that investor funding would be used in part to pay plaintiffs what they were owed, but that defendants never followed through on that commitment. *Id.* ¶¶ 26-31.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, a court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. If matters outside the pleadings are considered, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, a court may

consider matters that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank, N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)). Documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 889 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). A court may take notice of public records, but not of disputed facts stated in public records. *Khoja*, 899 F.3d at 999 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

With respect to questions defendants' motion raises concerning plaintiffs' claim for breach of the implied covenant of good faith and fair dealing and plaintiffs' alter ego theory, the parties agree that California law applies to this question. *See* Dkt. No. 28 at 6 (relying on California state law); Dkt. No. 34 at 6–7, 9 (same); Dkt. No. 37 at 4–5, 6–7 (same); *see also* Dkt. No. 1, Ex. 1 at 2 ("The parties agree and intend that all questions concerning this Agreement, including the validity, capacity of parties, effect[,] interpretation, and performance shall be governed by the laws of Santa Clara County in the State of California.").

### III. DISCUSSION

#### A. Request for Judicial Notice

Both parties filed requests for judicial notice. Defendants request the Court to judicially notice the California Secretary of State's website search result for ScanX showing that the company is registered to do business in California, and plaintiffs request the Court to judicially notice the Delaware Department of State Division of Corporations website search result for ScanX showing that the company is delinquent on nearly $100,000 in taxes. Dkt. Nos. 40, 41. At the hearing, plaintiffs suggested that the Delaware record supports plaintiffs' alter ego theory of liability against Mr. Clapper, but neither the FAC nor the parties' briefing mentions these documents. The Court therefore denies the parties' requests for judicial notice.

### B. Mr. Carlson's Standing (All Claims)

In its prior order granting defendants' motion to dismiss portions of the original complaint, the Court concluded that Mr. Carlson lacks standing to pursue claims on his own behalf if those claims are merely incidental to injury Carlson Produce suffered. Dkt. No. 26 at 5–6. The Court also held that Mr. Carlson lacks standing to enforce the Services Agreement because he is not a party to nor a third-party beneficiary of that agreement. *Id.* The Court permitted Mr. Carlson to amend the complaint to plead an alternative theory of standing to sue in his individual capacity based on a purported employment relationship separate from the Services Agreement. *Id.* at 6–7.

Defendants argue that Mr. Carlson lacks standing to prosecute this action because the FAC fails to plead an employment relationship separate from the Services Agreement. Dkt. No. 28 at 5. Mr. Carlson argues that the FAC pleads facts supporting the existence of a separate employment relationship and that he may pursue claims in the alternative for relief as an employee of ScanX and Mr. Clapper. Dkt. 34 at 4–6.

As he did in his original complaint, Mr. Carlson alleges that ScanX and Mr. Clapper controlled the manner and means of Mr. Carlson's work and supervised and directed his activities. *Compare* Dkt. No. 1 ¶ 18 *with* Dkt. No. 27 ¶ 17. In the FAC, Mr. Carlson additionally alleges that he was provided with business cards and an email address that identified him as a ScanX officer, and that ScanX presented Mr. Carlson to others as the "face of the company" in meetings, on its website, and in its presentation materials. Dkt. No. 27 ¶ 17. He contends that these facts show that he was an employee of ScanX and that the company held him out as an employee. *Id.*; Dkt. No. 34 at 5–6.

Mr. Carlson argues (as he did in opposing defendants' first motion to dismiss) that he has satisfied the "economic realities" test for employment described in *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341 (1989) and *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903 (2018). Dkt. No. 34 at 4–6. These cases concern the application of specific California labor laws and protections. *See generally S.G. Borello*, 48 Cal. 3d 341 (finding migrant workers are "employees" for the purposes of California's Workers' Compensation Act); *Dynamex*, 4 Cal. 5th 903 (addressing classification of workers for purposes of California wage orders). Mr.

Carlson does not explain how these cases inform an analysis of the very different circumstances he has pled in the FAC. At the hearing, Mr. Carlson suggested that he was improperly classified as an independent contractor when, in reality, he was a ScanX employee. That theory is neither pled in the FAC nor articulated in plaintiffs' opposition brief. Moreover, such a theory is at odds with Mr. Carlson's counsel's statement at the hearing on defendants' first motion to dismiss that the parties chose to enter into the Services Agreement so that both could avoid the obligations of a formal employment relationship, including tax obligations. Dkt. No. 25.

At the hearing on defendants' first motion to dismiss, Mr. Carlson suggested that, if given leave to amend, he could plead facts demonstrating the existence of an employment relationship separate from the Services Agreement, such as facts about how ScanX conducted business, what requirements imposed on him, how he worked with other ScanX employees, and how ScanX was structured. *See* Dkt. No. 32. The FAC contains no allegations about those matters, save for the allegations that ScanX held Mr. Carlson out as an officer of the company. But it is difficult to distinguish these allegations from the terms of the Services Agreement, which recite that "Consultant will be taking the title of President of Sales and Marketing for ScanX Inc." Dkt. No. 1, Ex. 1 at 1.

The Court concludes that Mr. Carlson has not alleged facts supporting a claim that he was an employee of ScanX or Mr. Clapper separate from the Service Agreement pursuant to which Carlson Produce, the limited liability company of which Mr. Carlson is the sole member, is identified as the "Consultant." Accordingly, for the reasons explained above in the Court's prior order (Dkt. No. 26), the Court concludes that Mr. Carlson lacks standing to pursue the claims in the FAC on his own behalf as an employee of ScanX or Mr. Clapper.

### C. Breach of the Duty of Good Faith and Fair Dealing (Claim 2 Against ScanX and Mr. Clapper)

Defendants argue that plaintiffs' second claim for breach of the implied covenant of good faith and fair dealing is superfluous and duplicative of their claim for breach of contract because it alleges the same conduct as the basis for liability and demands the same relief.

Every contract imposes on each party a duty of good faith and fair dealing in performance

and enforcement of the contract. *Careau & Co. v. Security Pacific Business Credit, Inc.,* 222 Cal. App. 3d 1371, 1393 (1990). The implied covenant "imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." *Id.* (internal quotations omitted).

"A breach of the implied covenant of good faith and fair dealing involves something beyond the breach of the contractual duty itself." *Id.* at 1394 (internal quotations omitted). "[A]llegations which assert such a claim must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities . . . which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Id.* at 1395. While a plaintiff may bring claims for both breach of contract and breach of the implied covenant, when both claims rely on the same alleged acts and seek the same relief, the breach of the implied covenant claim may be disregarded as superfluous. *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014) (citing *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 327 (2007)).

Here, for their breach of contract claim, plaintiffs plead that they fully performed under the Services Agreement and that "Defendants' failure to pay salary and performance bonuses, tender vested shares of ScanX common stock, and reimburse expenses are individually and together material breaches of" that agreement. Plaintiffs seek $509,098 in damages. Dkt. No. 27 ¶¶ 38-39; *id.* at 20:3. For their breach of the implied covenant claim, plaintiffs plead that "Defendants promised . . . wages, bonus, stock options and reimbursement of expenses," that plaintiffs "performed all duties pursuant to the [Services Agreement]," and that they "earned the right to receive the benefit of the bargain between the parties." *Id.* ¶ 42. They plead defendants' acts as follows:

> Defendants are invested with discretionary power affecting the rights of [plaintiffs] to receive the benefit of the bargain between the parties. Defendants have used their discretionary power to deny claims for wages and reimbursement of expenses to [plaintiffs], regardless of the agreement between the parties. In violation of the implied covenant of good faith and fair dealing, Defendants have taken steps to injure the right of [plaintiffs] to receive the benefits of the agreement. . . .

7

> The Defendants, in bad faith, have intentionally failed to honor their obligations under the bargain with [plaintiffs].

*Id.* ¶¶ 43-44. Plaintiffs identify no steps defendants took to frustrate the purposes of the Services Agreement that differ in any way from acts plaintiffs say constitute defendants' failure to perform their obligations under that agreement, which plaintiffs claim is a breach of contract. Moreover, plaintiffs appear to seek the same damages for breach of the implied covenant as they do for their breach of contract claim.

Plaintiffs argue that the gravamen of their breach of contract and breach of the implied covenant claims are different, citing *Digerati Holdings, LLC v. Young Money Entm't*, 194 Cal. App. 4th 873 (2011). In *Digerati*, the parties entered into an agreement for production of a documentary film, but plaintiffs claimed that defendants breached the implied covenant by undermining their ability to sell or distribute the film by, for example, informing distributors that the film was unauthorized and could be subject to future litigation. 194 Cal. App. 4th at 885. In that case, the court concluded that defendants' conduct frustrated plaintiff's efforts to market the film that was the subject of the parties' agreement, which was distinct from defendants' express obligations to make individuals available for interviews and provide video and photographic materials for use in the film. *Id.* at 884–85. Here, plaintiffs simply do not allege any different or additional conduct in support of their claim for breach of the implied covenant beyond defendants' failure to perform the terms of the Services Agreement itself.

Plaintiffs also argue that defendants' misrepresentations about the timing of investor funding and the payments to plaintiffs that would follow thereafter frustrated plaintiffs' abilities to perform their contractual duties. Dkt. No. 34 at 7. However, this argument is belied by the allegations of the FAC, which clearly state that plaintiffs continued to perform their obligations despite defendants' failure to make timely payments under the Services Agreement. *See id.* ¶¶ 25-31.

Accordingly, the Court concludes that plaintiffs do not state a claim for breach of the implied covenant of good faith and fair dealing.

### D. Claims 1, 2, 4, and 5 Against Mr. Clapper

Defendants move to dismiss claims 1, 2, 4, and 5 against Mr. Clapper on the ground that

there is no basis on which to hold him personally liable. Dkt. No. 28 at 7–8. Plaintiffs respond that Mr. Clapper may be liable on these claims based on his role as "co-employer" of Mr. Carlson and based on a theory that ScanX is Mr. Clapper's alter ego. Dkt. No. 34 at 8–11.

As explained above, the Court has concluded that Mr. Carlson fails to state a claim for relief against either defendant based on the purported existence of an employment relationship. For the same reasons, the Court finds that Mr. Carlson has not alleged an employment relationship between himself and Mr. Clapper that would support a theory that Mr. Clapper is personally liable with respect to all claims asserted against him in the FAC.

Defendants argue that the allegations of the FAC are insufficient to support plaintiffs' contention that Mr. Clapper is personally liable under an alter ego theory. "A claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation where the corporate form is being used by the individuals to escape personal liability, sanction a fraud, or promote injustice." *Hennessey's Tavern, Inc. v. American Air Filter Co.*, 204 Cal. App. 3d 1351, 1358–59 (1988). In applying the alter ego doctrine, the issue is not whether the corporation is the alter ego of its shareholders for all purposes or whether the corporation was organized for the purpose of defrauding the plaintiff, but rather whether justice and equity are best accomplished in a particular case, and fraud defeated, by disregarding the separate nature of the corporate form as to the claims in that case. *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985).

Alter ego liability is recognized "where two conditions are met: [f]irst, where there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; and, second, where adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice." *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (internal quotation marks and citation omitted). Factors suggesting an alter ego relationship include "the use of the same office or business location; . . . the use of a corporation as a mere shell, instrumentality, or conduit for a single venture or the business of an

9

individual or another corporation . . . ; [and] [the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability . . . ." *Associated Vendors, Inc. v. Oakland Meat Co., Inc.,* 210 Cal. App. 2d 825, 838–40 (1962) (internal quotations omitted). Sole ownership of a company alone is not a sufficient basis for alter ego liability. *Johnston v. Irontown Hous. Co., Inc.*, No. 13-CV-0523 W (BLM), 2014 WL 12531189, at *6 (S.D. Cal. Dec. 9, 2014) ("[A] sole proprietorship is a valid legal entity used to protect the owner from the corporation's debts and liabilities. It is, therefore, illogical to find that one's status as the sole proprietor supports an inference of alter-ego liability."); *Leek v. Cooper*, 194 Cal. App. 4th 399, 415 (2011) ("An allegation that a person owns all of the corporate stock and makes all of the management decisions is insufficient to cause the court to disregard the corporate entity.").

The Court previously held that plaintiffs had failed to adequately allege a theory of liability as to Mr. Clapper based on the alter ego doctrine, but granted leave to amend based on plaintiffs' representation at the hearing that there were additional facts that they could plead to support an alter ego theory. Dkt. No. 26 at 12–14. The Court further stated that, "[i]n their amended complaint, plaintiffs should make clear their alter ego theory of liability in the context of each claim." *Id.* at 14.

The FAC pleads that, "[u]pon information and belief, Mr. Clapper is the controlling shareholder of ScanX, and runs the business as his alter ego." Dkt. No. 27 ¶ 18. The FAC also alleges that Mr. Clapper failed to adequately capitalize ScanX and, "upon information and belief, has engaged in commingling of funds between ScanX, the various additional entities he controls, and his personal accounts. Because of the unauthorized diversion of corporate funds and assets to non-corporate uses, ScanX serves as a mere shell for the personal business of Clapper." *Id.* The FAC alleges in conclusory fashion that Mr. Clapper sought to escape personal liability for breach of contract and fraud by using ScanX as a corporate shield. *Id.* ¶ 19.

These allegations in the FAC are no more sufficient to state a plausible alter ego theory than the general and conclusory allegations that did not pass muster in the original complaint. Apart from the allegation that Mr. Clapper is the controlling shareholder of ScanX, plaintiffs plead no *facts* showing that there exists such a unity of interest between ScanX and Mr. Clapper that the

10

United States District Court
Northern District of California

corporate form may be disregarded in this case. *Schwarzkopf*, 626 F.3d at 1038. "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (quoting *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d, 1101, 1116 (C.D. Cal. 2003)) (internal quotation marks omitted). Here, plaintiffs' allegations about inadequate capitalization of ScanX and commingling of funds is based entirely on information and belief; the FAC states no supporting facts. Dkt. No. 27 ¶ 18. Plaintiffs allege that "Clapper runs multiple entities in addition to ScanX, by himself, out of the same business location with the same business phone number." *Id.* However, plaintiffs do not allege that Mr. Clapper's home address is the same as ScanX's business address, and the Court fails to see how having multiple businesses with the same address and business phone number as ScanX supports plaintiffs' thesis that ScanX is *Mr. Clapper's* alter ego. Although plaintiffs say that "Clapper personally benefitted from this activity and seeks to escape personal liability through the improper use of ScanX as a corporate shield for the activities which benefited him personally," *id.* ¶ 19, these assertions are made in a general and conclusory fashion. *Sandoval*, 34 F. Supp. 3d at 1040–41 (rejecting plaintiffs' allegations based solely "on information and belief" that individual defendants were alter egos of corporate defendants, that corporate defendants were underfunded, were not stand-alone corporations, had common management and pay practices, shared labor and materials, including a distribution and billing system, and operated a common marketing system); *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 962–63 (N.D. Cal. 2015) (observing that conclusory allegations based solely on information and belief are insufficient to state a claim for alter ego where the information and belief allegations merely mimic the language of factors that courts use to determine alter ego and do not supply any specific facts).

The Court finds that plaintiffs have failed to state a claim against Mr. Clapper individually based on an alter ego theory for claims 1, 2, 4, and 5. If plaintiffs obtain new information that they believe would support an alter ego theory, Carlson Produce may move for leave to amend the complaint in compliance with Federal Rule of Civil Procedure 15.

**IV. CONCLUSION**

The Court denies the parties' requests for judicial notice and grants defendants' motion to dismiss as follows:

1. Mr. Carlson's claims as pled in claims 1, 2, 3, 4, and 5 are dismissed;
2. Claim 2 for breach of the implied covenant of good faith and fair dealing is dismissed; and
3. Claims 1, 2, 4, and 5 against Mr. Clapper are dismissed.

Defendants shall answer the remaining claims in the FAC by **June 5, 2019.**

**IT IS SO ORDERED.**

Dated: May 22, 2019

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge