UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARLSON PRODUCE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ROCK CLAPPER, et al.,<br><br>Defendants. | Case No. 18-cv-07195-VKD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT AS TO SCANX**<br><br>Re: Dkt. No. 66 |

Plaintiff Carlson Produce, LLC ("Carlson Produce") sues defendant Rock Clapper for fraud and defendant ScanX, Inc. ("ScanX") for breach of contract, fraud, promissory estoppel, and quantum meruit/unjust enrichment.[1]  Dkt. Nos. 27, 45.  Carlson Produce requested an entry of default against ScanX only, which the Clerk of the Court entered.  Dkt. Nos. 60, 61.  Carlson Produce now moves for default judgment as to ScanX.  Dkt. No. 66.  ScanX did not file an opposition to the motion.

The Court heard oral argument on Carlson Produce's motion on December 3, 2019.  Dkt. No. 68.  ScanX did not appear.  *Id.*  With the Court's leave, Carlson Produce submitted supplemental declarations in support of its motion from its sole member, Craig Carlson, and its counsel, Eric Hiduke.  Dkt. Nos. 71, 72.  Having considered Carlson Produce's submissions and arguments made at the hearing, the Court grants in part and denies in part the motion for default judgment.

---

[1] All parties have consented to magistrate judge jurisdiction.  Dkt. Nos. 11, 16.

## I. BACKGROUND

### A. Factual Background

According to the operative complaint, Craig Carlson is a resident of Chicago, Illinois and the sole member of Carlson Produce, a limited liability company organized under the laws of Illinois with its principal place of business in Illinois. Dkt. No. 27 ¶¶ 4-5, 17. Mr. Carlson specializes in creating and managing high performance hardware and software products for companies in the produce supply industry. *Id.* ¶ 14.

ScanX is a Delaware corporation with its principal place of business in California. *Id.* ¶¶ 6-8. ScanX develops instruments for "real-time" detection of bacteria and chemicals in food. *Id.* ¶ 13. Mr. Clapper is a California resident and the President, Chairman, and controlling shareholder of ScanX. *Id.* ¶ 6.

On July 1, 2016, ScanX and Carlson Produce entered into a four-year Services Agreement.[2] *Id.* ¶ 16; Dkt. No. 66-1, Ex. A. The Services Agreement identifies Carlson Produce as "Consultant" and ScanX as "Company." Dkt. No. 66-1, Ex. A at 1. Pursuant to this agreement, "Consultant will be taking the title of President of Sales and Marketing for ScanX Inc. Responsibilities include all revenue generation processes. In this role he[3] is accountable for driving better integration and alignment between all revenue related functions, including marketing, sales, customer support, pricing, and revenue management." *Id.*

In exchange for those services, the Consultant was to receive "compensation of $210,000 per year for consulting activities, a 35% of salary annual bonus. . . . In addition, Consultant will receive 5.5% of ScanX stock to vest over 4 years. . . . Payment for consulting activities is due at the end of each 30 day period and the bonus is due 30 days after the year is complete." *Id.* Additionally, "[t]he Company shall reimburse travel costs, lodging, transportation and other preapproved expenses in relation to services provided by Consultant to Company. Payment is due fifteen (15) days from the date Company receives invoice." *Id.* at 2. Furthermore, "[i]n the event

---

[2] The Services Agreement is between ScanX and "Carlson Produce Consulting LLC." Dkt. No. 66-1, Ex. A at 1. The parties do not dispute that "Carlson Produce Consulting LLC" is the same entity as plaintiff Carlson Produce.

[3] The Services Agreement does not specify who "he" is.

2

either party terminates the Agreement, the company shall pay Contractor [sic] all prorated compensation, vested stock, prorated bonus and expenses that are due to Contractor [sic] up to the date of termination." *Id.* at 1. The Services Agreement was signed by Mr. Clapper for ScanX and by Mr. Carlson as a "Member" for Carlson Produce. *Id.* at 2.

The Services Agreement contains an integration clause. *Id.* It also provides that "all questions concerning this Agreement, including the validity, capacity, of parties, effect[,] interpretation, and performance shall be governed by the laws of Santa Clara County in the State of California." *Id.* The Services Agreement further states that "[i]n the event that either party is required to initiate legal action to enforce the terms and provisions of this Agreement, the prevailing party in such action shall be entitled to award of costs and reasonable attorney fees from the non-prevailing party." *Id.*

Defendants paid Carlson Produce for the first two months of services provided under the Services Agreement but failed to pay thereafter, despite Carlson Produce's full performance. Dkt. No. 27 ¶¶ 24-25. On multiple occasions, defendants represented that investor funding would be used in part to pay Carlson Produce what it was owed, but defendants never followed through on that commitment. *Id.* ¶¶ 26-31.

### B. Procedural History

Carlson Produce and Mr. Carlson filed this action on November 28, 2018. Dkt. No. 1. After two motions to dismiss, the only claims remaining are Carlson Produce's claims for breach of contract, promissory estoppel, and quantum meruit/unjust enrichment against ScanX only, and Carlson Produce's claim for fraud against both ScanX and Mr. Clapper. Dkt. Nos. 26, 45.

On May 17, 2019, defendants' counsel moved to withdraw from representation pursuant to Civil Local Rule 11-5. Dkt. No. 44. The Court conditionally granted that motion on June 26, 2019. Dkt. No. 56. In that order, the Court observed that a corporation such as ScanX may not appear pro se before the Court and warned ScanX that failure to obtain counsel may subject ScanX to default judgment. *Id.* The Court stayed the case for 30 days to permit ScanX to obtain new counsel. *Id.* at 3–5. No substitute counsel appeared for defendants, and neither defendant requested additional time to obtain new counsel. On July 30, 2019, all conditions having been

satisfied, the Court lifted the stay and permitted defense counsel to withdraw. Dkt. No. 59.

On August 5, 2019, the Clerk of the Court entered default against ScanX. Dkt. No. 61. Carlson Produce now moves for default judgment as to ScanX. Dkt. No. 66.

## II. LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action, who is neither a minor nor an incompetent person, and against whom a judgment for affirmative relief is sought. Fed. R. Civ. P. 55(a).

After entry of default, a court may, in its discretion, enter default judgment. Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to enter default judgment, a court may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). When the damages claimed are not readily ascertainable from the pleadings and the record, the court may hold a hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

## III. DISCUSSION

### A. Jurisdiction and Service of Process

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because Carlson Produce is an Illinois limited liability company whose sole member is an Illinois citizen, and ScanX is a Delaware corporation with its principal place of business in California. Dkt. No. 27 ¶¶ 4, 7-9;

4

*Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (holding that a limited liability corporation is a citizen of every state of which its owners/members are citizens). ScanX is subject to the Court's personal jurisdiction because it is headquartered in California. *Id.*

A court must also ensure the adequacy of service on the defendant. *See Timbuktu Educ. v. Alkaraween Islamic Bookstore*, No. C 06–03025 JSW, 2007 WL 1544790, at *2 (N.D. Cal. May 25, 2007). Carlson Produce served ScanX, which initially appeared and defended the action. Dkt. Nos. 13, 14.

The Court is satisfied that Carlson Produce has established that the Court has subject matter and personal jurisdiction and that service was properly effected.

### B. *Eitel* Factors

For the reasons discussed below, the *Eitel* factors weigh in favor of entering default judgment.

#### 1. The possibility of prejudice to Carlson Produce

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and whether such potential prejudice to the plaintiff weighs in favor of granting default judgment. *Eitel*, 782 F.2d at 1471; *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010).

Carlson Produce filed this action on November 28, 2018 and subsequently amended its complaint once. Dkt. Nos. 1, 27. Following defense counsel's motion to withdraw, the Court stayed the action to permit time for ScanX to obtain new counsel. Dkt. No. 56. Nevertheless, ScanX did not obtain new counsel and has not subsequently litigated this action, despite having been warned by its former counsel and the Court that it may not proceed pro se. *Id.*; Dkt. No. 59. Given ScanX's apparent unwillingness to litigate, Carlson Produce would likely be left without recourse against ScanX on its breach of contract claim[4] if the Court does not enter default judgment.

The possibility of prejudice to Carlson Produce therefore weighs in favor of granting

---

[4] *See infra* Section III.B.2.

default judgment.

### 2. The merits of Carlson Produce's claims and the sufficiency of the complaint

The second and third *Eitel* factors concern the merits of the claim and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471. The Ninth Circuit suggests that these factors require that a plaintiff state a claim for relief on which she may recover. *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at \*2 (N.D. Cal. Feb. 13, 1996) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Carlson Produce's only remaining claims are for breach of contract, promissory estoppel, and quantum meruit/unjust enrichment against ScanX, and Carlson Produce's claim for fraud against both ScanX and Mr. Clapper. Dkt. No. 45. With respect to the claim for breach of contract under California law, a plaintiff must plead (1) the existence of a contract with the defendant, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). As discussed above, Carlson Produce has pled that it entered into the Services Agreement with ScanX and performed its obligations pursuant to the agreement's terms. Dkt. No. 27 ¶¶ 16, 21, 24, Ex. A. Carlson Produce also pled that ScanX breached its obligation to pay Carlson Produce under the terms of the contract, causing Carlson Produce to suffer harm in the form of lost compensation for consulting activities, lost bonus, and unreimbursed expenses. *Id.* ¶¶ 25-33. The Court finds that Carlson Produce has stated a claim for breach of contract.

With respect to the claims for promissory estoppel and quantum meruit/unjust enrichment, Carlson Produce represented at the hearing that the only damages it seeks are those enumerated in the parties' Services Agreement, and that its claims for promissory estoppel and quantum meruit/unjust enrichment are "fall-back" claims to which it intended to resort in the event it could not recover on its breach of contract claim. Carlson Produce advised the Court at the hearing that it is sufficient for the Court to consider only its breach of contract claim against ScanX. Because Carlson Produce's claims for promissory estoppel and quantum meruit/unjust enrichment are duplicative of its breach of contract claim, the Court declines to enter default judgment on those

6

claims. *See, e.g.*, *Rasmussen v. Dublin Rarities*, No. C 14-1534 PJH, 2015 WL 1133189, at *12 (N.D. Cal. Feb. 27, 2015) (declining to enter default judgment as to claim for money had and received as duplicative of other claims for fraud, conversion, and breach of contract); *Willamette Green Innovation Center, LLC v. Quartis Capital Partners*, No. 13-cv-00848-JCS, 2014 WL 5281039, at *8 (N.D. Cal. Jan. 21, 2014) (recommending same). Carlson Produce's promissory estoppel and quantum meruit/unjust enrichment claims are dismissed.

With respect to the fraud claim, the Court has already determined that that Carlson Produce has pled facts sufficient to state a claim for fraud against ScanX and Mr. Clapper. Dkt. Nos. 26, 45. Carlson Produce represented at the hearing that it intends to continue litigating its claim for fraud against Mr. Clapper after obtaining default judgment against ScanX. Where a plaintiff seeks default judgment against fewer than all defendants in a single action, the Supreme Court has held that a court should not enter a default judgment which is or is likely to be inconsistent with a judgment on the merits as to any answering defendants. *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001) (discussing *Frow v. De La Vega*, 82 U.S. 552, 554 (1987)). Specifically, the Ninth Circuit has cautioned against default judgment against only some defendants where multiple defendants answering the same complaint have closely related defenses or are otherwise "similarly situated," even if not jointly and severally liable. *Id.* The key question is whether "under the theory of the complaint, liability of all the defendants must be uniform." *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1008–09 (N.D. Cal. 2001). Here, Carlson Produce seeks to hold ScanX and Mr. Clapper jointly and severally liable for the same conduct; as pled in the operative complaint, the facts and theories of its claim for fraud are the same as to both ScanX and Mr. Clapper. Dkt. No. 27 at 19–20. Because entering default judgment against ScanX on the fraud claim risks the possibility of an inconsistent judgment with respect to Mr. Clapper on the same claim, the Court declines to enter default judgment.

These factors therefore weigh in favor of default judgment as to the breach of contract claim only, and against default judgment as to the fraud claim and the duplicative claims of promissory estoppel and quantum meruit/unjust enrichment.

### 3. The amount of money at stake

The fourth *Eitel* factor considers the amount of money at stake in the litigation. *Eitel*, 782 F.2d at 1471. When the money is substantial or unreasonable, default judgment is discouraged. *See id.* at 1472 (three-million dollar judgment, considered in light of parties' dispute as to material facts, supported decision not to enter default judgment); *Tragni v. S. Elec. Inc.*, No. 09-32 JF (RS), 2009 WL 3052635, at *5 (N.D. Cal. Sept. 22, 2009); *Bd. of Trustees v. RBS Washington Blvd, LLC*, No. C 09-00660 WHA, 2010 WL 145097, at *3 (N.D. Cal. Jan. 8, 2010). When the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate. *See Bd. of Trustees of the Sheet Metal Workers Health Care Plan of N. Cal. v. Superhall Mechanical, Inc.*, No. C-10-2212 EMC, 2011 WL 2600898, at *2–3 (N.D. Cal. June 20, 2011) (the amount of unpaid contributions, liquidated damages, and attorney's fees were appropriate as they were supported by adequate evidence provided by the plaintiffs).

Here, under the terms of the parties' Services Agreement, Carlson Produce seeks: $442,074.19 in unpaid compensation, bonuses, and reimbursed expenses for the period from September 1, 2016 to April 3, 2018; 2.52% shares of fully vested ScanX common stock; $83,209.50 in attorneys' fees; and $8,947.47 in costs. Dkt. No. 66 at 23; Dkt. No. 71, Ex. A at 1–2 (providing that in the event the agreement is terminated, ScanX shall pay Carlson Produce "all prorated compensation, vested stock, prorated bonus, and expenses" due up to the date of termination, and that the prevailing party in an action seeking to enforce the agreement "shall be entitled to an award of costs and reasonable attorney fees from the non-prevailing party"). In addition, Carlson Produce requests $122,507.84 in prejudgment interest for the period from September 1, 2016 to December 13, 2019. Dkt. No. 71 ¶ 13, Ex. C. As discussed below, the Court concludes that the evidence supports an award in the amount of $487,128.36. *See infra* Section III.C.

In view of the connection between the alleged wrongdoing—failure to pay Carlson Produce under the terms of the agreement—and the compensation expressly contemplated in the parties' agreement, the amount of money at stake does not weigh against default judgment.

8

### 4. The possibility of a dispute concerning material facts or excusable neglect

The fifth and sixth *Eitel* factors concern the potential for factual disputes and whether a defendant's failure to respond was likely due to excusable neglect. *Eitel*, 782 F.2d at 1471–72. In *Eitel*, there was both a factual dispute and excusable neglect. *Id.* at 1472. There, the defendant filed an untimely answer and counterclaim in which it disputed a number of material facts. *Id.* The *Eitel* court found that the parties had previously agreed to a final settlement of the action, and that the defendant reasonably relied on this agreement and promptly responded to the complaint when the agreement dissolved. *Id.* The court excused the defendant's failure to timely respond to the complaint and acknowledged the dispute of fact raised in the response. *Id.*

Here, the record demonstrates that ScanX had ample warning that it risked default unless it obtained counsel. Dkt. No. 56, 58, 59. After defense counsel withdrew, Carlson Produce served ScanX with copies of its motion for entry of default, Carlson Produce's status report stating its intention to move for default judgment, and Carlson Produce's motion for default judgment. Dkt. Nos. 60-2, 65-2, 67. However, ScanX did not obtain counsel and did not take any further action to defend itself by disputing any material facts. Upon entry of default by the Clerk of the Court, the factual allegations of the complaint related to liability are taken as true. *Shaw v. Five M, LLC*, No. 16-cv-03955-BLF, 2017 WL 747465, at *4 (N.D. Cal. Feb. 27, 2017). There is no indication that ScanX's default is due to excusable neglect.

These factors also weigh in favor of default judgment.

### 5. The strong policy favoring decisions on the merits

The seventh *Eitel* factor requires considering the strong policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1472; *see also Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). Although default judgment is disfavored, "[t]he very fact that [Rule] 55(b) exists shows that this preference, standing alone, is not dispositive." *Kloepping*, 1996 WL 75314 at *3. "While the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits [,] . . . [as] when a party fails to defend against an action[.]" *Id.*

While the Court prefers to decide matters on the merits, ScanX's failure to participate in

9

this litigation makes that impossible. Default judgment against ScanX is Carlson Produce's only recourse against that entity. *See United States v. Roof Guard Roofing Co., Inc.*, No. 17-cv-02592-NC, 2017 WL 6994215, at *3 (N.D. Cal. Dec. 14, 2017) ("When a properly adversarial search for the truth is rendered futile, default judgment is the appropriate outcome.").

This factor also weighs in favor of default judgment.

### C. Requested Judgment

"To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit." *Bd. of Trustees of the Laborers Health & Welfare Trust Fund for N. Cal. v. A & B. Bldg. Maint. Co. Inc.*, No. C 13-00731 WHA, 2013 WL 5693728, at *4 (N.D. Cal. Oct. 17, 2013); *Cannon v. City of Petaluma*, No. C 11-0651 PJH, 2011 WL 3267714, at *2 (N.D. Cal. July 29, 2011) ("In order to 'prove up' damages, a plaintiff is generally required to provide admissible evidence (including witness testimony) supporting damage calculations."); *see also Bd. of Trustees of Bay Area Roofers Health & Welfare Trust Fund v. Westech Roofing*, 42 F. Supp. 3d 1220, 1232 n.13 (N.D. Cal. 2014) ("It is Plaintiffs' burden on default judgment to establish the amount of their damages.").

Here, Carlson Produce seeks a total of $656,738.90 as follows: $442,074.19 in compensation, bonuses, and unreimbursed expenses for the period from September 1, 2016 to April 3, 2018; $122,507.74 in prejudgment interest; $83,209.50 in attorneys' fees ($74,052.00 for Mr. Hiduke's services and $9,157.50 for Mr. Grimm's services); and $8,947.47 in costs under the terms of the parties' agreement. Dkt. No. 66-1, Ex. A at 1–2; Dkt. No. 71 ¶ 13; Dkt. No. 66-3 ¶ 9; Dkt. No. 72 ¶ 18. Carlson Produce also seeks 2.52% shares of fully vested ScanX common stock. Dkt. No. 71 ¶ 13. The Court addresses each request in turn.

#### 1. Compensation, bonuses, and reimbursed expenses

Carlson Produce seeks a total of $442,074.19 in actual damages: $299,750.00 in unpaid compensation, $129,279.45 in unpaid bonuses, and $13,044.74 in unreimbursed expenses. Dkt. No. 71 ¶ 13. The supplemental Carlson declaration that Carlson Produce submitted after the hearing includes a table purportedly summarizing these amounts. *Id.*, Ex. C.

#### a. Compensation

With respect to unpaid compensation, Carlson Produce claims a total of $299,750.00 as follows: (16 months * $17,500 per month) + (3 months * $6,000 per month) + $1,750 prorated compensation for 3 days. Dkt. No. 71 ¶ 13, Ex. C. At the hearing, Carlson Produce explained that it had agreed to accept reduced compensation for three months in 2017. *See also id.*, Ex. C at 1. The supplemental Carlson declaration on which Carlson Produce relies contains contradictory information about the amount of this reduced compensation. Paragraph 13 of the supplemental Carlson declaration states that the reduced compensation was $5,833.33 per month, but Exhibit C of the supplemental Carlson declaration indicates that the reduced compensation was $6,000 per month. *Compare id.* ¶ 13 *with id.*, Ex. C at 1. The Court accepts the representation made in paragraph 13 of the supplemental Carlson declaration.

Additionally, in the absence of supporting calculations, the Court rejects Carlson Produce's claim that prorated compensation for three days' work in April 2018 is $1,750. Instead, the Court finds that the correct prorated compensation for these three days is $1,726.03 ($210,000 annual salary / 365 days = $575.34 per day * 3 days = $1,726.03).

The Court concludes that Carlson Produce is owed unpaid compensation of **$298,776.02**.

#### b. Bonuses

With respect to unpaid bonuses, Carlson Produce asserts that ScanX owes it $129,279.45 (calculated as $6,125 per month * 21 months and 3 days). Dkt. No. 71 ¶ 13. Once again, Carlson Produce's calculation appears to be inconsistent with the evidence. The Services Agreement provides for an annual bonus of 35% of Carlson Produce's $210,000 annual compensation. On a prorated basis, the bonus amount is $6,125 per month or $201.37 per day.

The Court concludes that Carlson produce is owed an unpaid bonus of **$129,229.11** ([$6,125 * 21 months] + [$201.37 * 3 days]).

#### c. Expenses

With respect to unreimbursed expenses, Mr. Carlson's first declaration lists an amount owed of $13,044.74, with no explanation or support. Dkt. No. 66-1 ¶ 13. The supplemental Carlson declaration includes an 88-page exhibit consisting of what appear to be receipts, but again

1 the declaration includes no statements describing the exhibit, authenticating the documents it
2 contains, or tying them to the amount claimed in the first declaration. Dkt. No. 71, Ex. B. The
3 Court assumes (reading the two declarations together and giving Carlson Produce the benefit of
4 the doubt) that the 88-page exhibit is intended to support the claim for $13,044.74 in expenses that
5 Carlson Produce incurred, and accepts the representation made that Carlson Produce incurred
6 **$13,044.74** in approved expenses.

#### d. ScanX common stock

At the hearing, Carlson Produce withdrew its request for an award of ScanX common stock.

#### e. Summary

The Court concludes that Carlson Produce has established actual damages due to ScanX's breach of contract in the amount of **$441,049.87** ($298,776.02 + $129,229.11 + $13,044.74).

### 2. Prejudgment interest

Carlson Produce also seeks an award of prejudgment interest on its actual damages for breach of contract. Dkt. No. 66 at 23; Dkt. No. 71 ¶ 13, Ex. C. In its motion, Carlson Produce does not explain or support its claim for prejudgment interest. However, at the hearing and in response to questions from the Court, counsel explained that Carlson Produce seeks interest at a rate of 10% per month pursuant to California Civil Code § 3287. The Court permitted Carlson Produce to submit a supplemental declaration supporting its claim for prejudgment interest.

The Services Agreement is silent on the issue of whether the prevailing party in an action to enforce the agreement is entitled to prejudgment interest. *See* Dkt. No. 66-1, Ex. A. However, under California Civil Code § 3287, prejudgment interest is recoverable in any action in which damages are certain or "capable of being made certain by calculation" and the right to recover such damages is vested in the plaintiff on a particular day. Cal. Civ. Code § 3287(a); *see also Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 174–75 (2000). The test for determining "certainty" under section 3287(a) is whether the defendant actually knows the amount owed or could have computed the amount from reasonably available information. *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 774 (2002). Because the amount of damages

for Carlson Produce's breach of contract claim can be calculated with certainty, Carlson Produce is eligible to receive prejudgment interest. The decision to award prejudgment interest lies within the Court's discretion. *Rasmussen*, 2015 WL 1133189, at *19.

The supplemental Carlson declaration indicates that Carlson Produce now seeks a total of $122,507.84 in prejudgment interest as of December 13, 2019, calculated on a monthly basis (excluding interest based on unpaid bonuses and unpaid compensation for the three days worked in April 2018). Dkt. No. 71 ¶ 13, Ex. C. However, California Civil Code § 3289 specifies an interest rate of 10% per *year* following a breach, in the absence of an agreed rate. Cal. Civ. Code § 3289(b) ("If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent *per annum* after a breach.") (emphasis added). Carlson Produce does not explain why it relies on a monthly calculation, or how it believes this calculation is mathematically equivalent to the rate specified in section 3289(b). Its requested $122,507.84 figure does not appear to be an accurate calculation of prejudgment interest at an annual rate of 10% with no compounding.

Because Carlson Produce has not adequately supported its claim for prejudgment interest, even after a second opportunity to do so, the Court denies the request for prejudgment interest. *See Andrade v. Arby's Rest. Grp., Inc.*, 225 F. Supp. 3d 1115, 1140–41 (N.D. Cal. 2016) (declining to award prejudgment interest where party provided no documentation suggesting how to calculate interest amount).

### 3. Attorneys' fees

The Services Agreement provides for an award of reasonable attorneys' fees for the prevailing party seeking to enforce the terms of the agreement. Dkt. No. 66-1, Ex. A at 1. Carlson Produce originally sought an award of $99,841.50 in fees. Dkt. No. 66 at 23; Dkt. No. 66-1, Ex. A at 1–2. At the hearing, the Court questioned whether that amount included duplication of work between ScanX's two attorneys, and whether it also included work on Carlson Produce's less than meritorious opposition to defense counsel's motion to withdraw. Following the hearing, Carlson Produce submitted a supplemental declaration from its counsel, Eric Hiduke, which appears to remove time spent on the opposition to the motion to withdraw and accounts for duplicative work.

Carlson Produce now seeks an award of attorneys' fees in the amount of $83,209.50. Dkt. No. 72.

In calculating awards for attorneys' fees, courts use "the 'lodestar' method, and the amount of that fee must be determined on the facts of each case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)) (internal quotation marks and citations omitted); *see also Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997). The moving party bears the burden of providing relevant documentation demonstrating the reasonableness of the hours spent on the litigation. *Hensley*, 461 U.S. at 433. In the absence of adequate documentation supporting the number of hours expended on the lawsuit, "the district court may reduce the award accordingly." *Id.* "The district court also should exclude from this initial [lodestar] calculation hours that were not 'reasonably expended.'" *Id.* at 434 (quoting S. Rep. No. 94-1011, p. 6 (1976)). When determining the reasonable hourly rate, the court must weigh the "experience, skill, and reputation of the attorney requesting fees," and compare the requested rates to prevailing market rates. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987); *see also Blum v. Stenson*, 465 U.S. 886, 886 (1984). Once calculated, the lodestar amount, which is presumptively reasonable, may be further adjusted based on other factors not already subsumed in the initial lodestar calculation. *Morales*, 96 F.3d at 363–64, nn.3–4 (identifying factors) (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

Carlson Produce's two attorneys submitted declarations in support of Carlson Produce's request for fees. Richard Grimm declares that Carlson Produce incurred $9,157.50 for his services for a total of 18.5 hours worked. Dkt. No. 66-3 ¶¶ 7-9. Eric Hiduke declares that Carlson Produce incurred $74,052.00 for his services for a total of 149.6 hours worked. Dkt. No. 72 ¶¶ 15, 18. Counsels' declarations do not distinguish between hours spent on the breach of contract claim as opposed to the fraud claim.

Under the lodestar analysis, the Court must first determine whether counsel's rates are

reasonable, as determined by "the prevailing market rates in the relevant community." *Blum*, 465 U.S. at 886. The market rates used in this comparison should pertain to attorneys with similar "skill, experience, and reputation" to the moving attorneys. *Chalmers*, 796 F.2d at 1211(citing *Blum*, 465 U.S. at 895 n.11). Second, the Court must examine whether the hours expended on this litigation are reasonable.

With respect to reasonableness of counsel's rates, "[a] reasonable hourly rate is ordinarily the prevailing market rate in the relevant community." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016.) "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho*, 523 F.3d at 980. Although Carlson Produce asserts that the hourly rate requested is "below the reasonable rates for attorneys of their experience in the San Francisco Bay Area legal market," it offers no evidence to support that assertion, such as an affidavit from another attorney. The portions of the Grimm and Hiduke declarations that Carlson Produce cites do not support that statement. Dkt. No. 66 at 26 (citing Dkt. No. 66-3 ¶ 8; Dkt. No. 66-2 ¶ 16[5]). Mr. Grimm's declaration states that he seeks $495 per hour for his work, which is lower than his standard rate of $795 per hour; he does not discuss the relevant market rate. Dkt. No. 66-3 ¶ 8. Mr. Hiduke's declarations similarly state that he seeks $495 per hour instead of his standard rate of $695 per hour. Dkt. No. 66-2 ¶ 17; Dkt. No. 72 ¶ 17. Mr. Hiduke's declarations further assert that "[o]ther attorneys in the community charge similar, or higher, hourly fees than the ones sought herein for similar services." Dkt. No. 66-2 ¶ 17; Dkt. No. 72 ¶ 17. However, neither Mr. Hiduke nor Carlson Produce provide any evidence or cite any cases to support that general assertion.

Nevertheless, other courts in this district have found similar rates reasonable for attorneys of Carlson Produce's counsel's experience performing similar work in civil commercial disputes. *See, e.g.*, *Baskin-Robbins Franchising LLC v. Chun*, No. 5:18-cv-05476-BLF, 2019 WL 5268883,

---

[5] Paragraph 16 of the Hiduke declaration discusses litigation costs, not attorneys' fees. Paragraph 17 discusses Mr. Hiduke's billing rate.

at *2 (N.D. Cal. Oct. 17, 2019) (finding $475 per hour to be a reasonable hourly rate for a partner with 30 years of experience in complex commercial litigation; listing cases finding $475-$975 per hour reasonable for partners practicing business and commercial litigation); *Marshall Wealth Mgmt. Grp., Inc. v. Santillo*, No. 18-cv-0351-LHK, 2019 WL 79036, at *11 (N.D. Cal. Jan. 2, 2019) ($425 per hour reasonable for attorney with 29 years of experience litigating business-related matters in state and federal courts); *Fresh & Best Produce, Inc. v. Oaktown Ventures, LLC*, No. 16-cv-06991 NC, 2017 WL 8950393, at *6 (N.D. Cal. May 19, 2017) ($380 and $390 per hour reasonable for partner with over 20 years of experience in business litigation). Messrs. Grimm and Hiduke have been practicing law for 24 years and 22 years, respectively. Dkt. No. 66-3 ¶ 3; Dkt. No. 72 ¶ 3. In light of this experience, the Court finds that $495 an hour is a reasonable rate for each of them.

However, the Court finds that the number of hours claimed does not reflect hours reasonably worked on Carlson Produce's breach of contract claim against ScanX. Both of Carlson Produce's remaining claims—breach of contract against ScanX, and fraud against ScanX and Mr. Clapper—share a core of common facts, but the claims are by no means co-extensive. As discussed above, Carlson Produce moves for default judgment only as to its breach of contract claim against ScanX. At the hearing, Carlson Produce's counsel represented that the number of hours for which Carlson Produce seeks fees includes work done on both breach of contract and fraud claims against both defendants, at least until the date defense counsel withdrew from representation. *See* Dkt. No. 56 (conditionally granting defense counsel's motion to withdraw and observing that although Mr. Clapper may appear pro se, ScanX—as a corporation—could not). Carlson Produce has not apportioned its attorneys' fees between its breach of contract claim against ScanX and its fraud claim against ScanX and Mr. Clapper.

A court may reduce fees claimed if the documentation is inadequate, the submitted hours are duplicative or inefficient, or the requested fees appear excessive or otherwise unnecessary. *Hensley*, 461 U.S. at 434; *see also Chalmers*, 796 F.2d at 1210. Because Carlson Produce's motion for default judgment applies only to the breach of contract claim against ScanX (one of the two remaining claims), and because the Services Agreement provides for recovery of attorneys'

fees for the prevailing party seeking to enforce the agreement (but not for fraud), the Court finds it appropriate to reduce the hours claimed by 50%. Dkt. No. 66-1, Ex. A at 2; *Hensley*, 461 U.S. at 436 ("If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."); *see also Marshall Wealth*, 2019 WL 79036, at *10 (reducing fees amount awarded by 1/3 where plaintiffs prevailed on four claims out of six asserted on default judgment).

Accordingly, the Court discounts the requested $83,209.50 amount by reducing the hours claimed by 50%, and awards Carlson Produce **$41,604.75** in attorneys' fees for work performed in connection with Carlson Produce's breach of contract claim against ScanX.

| **Attorney** | **Rate** | **Hours** | **Total** |
|---|---|---|---|
| Eric Hiduke | $495 | 74.8 | $37,026.00 |
| Richard Grimm | $495 | 9.25 | $4,578.75 |
| | | Total: | **$41,604.75** |

### 4. Costs

Carlson Produce seeks costs in the amount of $8,947.47 for the following: (1) filing and service costs ($697.00), (2) travel costs ($5,624.97), and (3) research and investigation costs ($2,625.50). Dkt. No. 66 at 23; Dkt. No. 72 ¶16. Under the terms of the parties' agreement, Carlson Produce, as the prevailing party, is entitled to an award of costs. Dkt. No. 27, Ex. A at 2 ("In the event that either party is required to initiate legal action to enforce the terms and provisions of this Agreement, the prevailing party in such action shall be entitled to award of costs and reasonable attorney fees from the non-prevailing party."). For the same reasons the Court concluded that it is appropriate to apportion attorneys' fees, the Court concludes it is likewise appropriate to apportion costs as between the breach of contract claim and the fraud claim. *See supra* Section III.C.3. Accordingly, the Court awards Carlson Produce 50% of its costs in the amount of **$4,473.74**.

| **Final Award** | |
|---|---:|
| Actual Damages | $441,049.87 |
| Prejudgment Interest | $0 |
| Attorneys' Fees | $41,604.75 |
| Costs | $4,473.74 |
| **Total** | **$487,128.36** |

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Carlson Produce's motion for default judgment against ScanX. The Court grants Carlson Produce's motion as to the claim for breach of contract and will enter judgment against ScanX in the amount of **$487,128.36**.

The Court denies the motion for default judgment as to Carlson Produce's claims against ScanX for promissory estoppel and quantum meruit/unjust enrichment, and those claims are hereby dismissed.

Carlson Produce must serve a copy of this order on ScanX and file a proof of service with the Court.

**IT IS SO ORDERED.**

Dated: February 3, 2020

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge