1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8    CARLSON PRODUCE, LLC,

Case No.  18-cv-07195-VKD

9                          Plaintiff,

10              v.

**ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND DISMISSING FRAUD CLAIM**

11    ROCK CLAPPER, et al.,

Re: Dkt. Nos. 93, 94-4, 95, 98

12                          Defendants.

13

14          Plaintiff Carlson Produce, LLC ("Carlson Produce") moves for summary judgment against

15    defendants ScanX, Inc. ("ScanX") and Rock Clapper on Carlson Produce's sole remaining claim

16    for fraud.  Dkt. No. 93.  ScanX, which is not represented by counsel, did not respond to the

17    motion.  Mr. Clapper opposes Carlson Produce's motion and cross-moves for summary judgment.

18    Dkt. Nos. 94, 94-4.  In response, Carlson Produce moves to defer or deny Mr. Clapper's cross-

19    motion under Federal Rule of Civil Procedure 56(d) and also moves to exclude Mr. Clapper's

20    supporting declaration pursuant to Rule 37(d)(1)(A)(iii).  Dkt. Nos. 95, 98.

21          The Court heard oral argument on the parties' motions on July 21, 2020.  Dkt. No. 103.  At

22    the Court's request, the parties submitted supplemental briefing after the hearing.  Dkt. Nos. 107-

23    109.  Having considered the parties' submissions and the arguments made at the hearing, the Court

24    denies Carlson Produce's motion for summary judgment and Mr. Clapper's cross-motion for

25    summary judgment.  However, because the Court concludes that the economic loss rule bars

26    Carlson Produce's fraud claim, the Court dismisses that claim.

27
28

United States District Court
Northern District of California

United States District Court
Northern District of California

# I.      BACKGROUND[1]

## A.      Factual Background

Craig Carlson is the sole member of Carlson Produce, a limited liability company organized under the laws of Illinois with its principal place of business in Illinois.  Dkt. No. 27 ¶¶ 4-5, 17; Dkt. No. 93-3 ¶ 1.

Mr. Clapper is Chairman and founder of ScanX, a corporation organized under Delaware law with its principal place of business in California.  Dkt. No. 94-1 ¶¶ 2, 5.  ScanX develops instruments for "real-time" detection of chemicals in food.  *Id.* ¶ 3.

On July 1, 2016, ScanX and Carlson Produce entered into a four-year Services Agreement.  *Id.* ¶ 6; Dkt. No. 93-3 ¶ 2, Ex. A.  Pursuant to this agreement, Carlson Produce undertook responsibility for "all revenue generation processes . . . including marketing, sales, customer support, pricing, and revenue management."  Dkt. No. 93-3, Ex. A at 1.  In exchange for those services, ScanX agreed to pay Carlson Produce "compensation of $210,000 per year for consulting activities" plus "a 35% of salary annual bonus," and agreed that Carlson Produce would receive "5.5% of ScanX stock to vest over 4 years."  *Id.*  Additionally, ScanX agreed to reimburse Carlson Produce for "travel costs, lodging, transportation and other preapproved expenses in relation to services provided" to ScanX.  *Id.* at 2.  The Services Agreement was signed by Mr. Clapper for ScanX and by Mr. Carlson as a "Member" for Carlson Produce.  *Id.*

ScanX paid Carlson Produce for the first two months of services provided under the Services Agreement but failed to pay thereafter, despite what Carlson Produce describes as full performance of Carlson Produce's obligations.  Dkt. No. 93-3 ¶ 3; Dkt. No. 94-1 ¶ 6.  According to Mr. Carlson, defendants represented on multiple occasions that investor funding would be used in part to pay Carlson Produce what it was owed, but defendants never followed through on that commitment.  Dkt. No. 93-3 ¶¶ 5, 6.

In September 2016, Mr. Clapper informed Mr. Carlson that ScanX expected to receive $150,000 in investment money.  *Id.* ¶ 8; Dkt. No. 94-1 ¶ 7.  According to Mr. Carlson, Mr.

---

[1] Here, the Court includes facts that are undisputed or otherwise supported by evidence offered by Carlson Produce, but does not include disputed evidence offered by Mr. Clapper for the reasons described below.  *See infra* Section III.D.

1    Clapper stated that the $150,000 would be used to influence other investors, and that additional

2    money would be received and used to pay Carlson Produce.  Dkt. No. 93-3 ¶ 8.

3            In December 2017, a group of Chinese investors agreed to invest in ScanX.  *Id.* ¶ 9; Dkt.

4    No. 94-1 ¶ 8.  On December 22, 2017, Mr. Clapper advised ScanX creditors (including Carlson

5    Produce) that the Chinese investment manager would wire funds from a bank in Hong Kong to the

6    United States.  Dkt. No. 93-3 ¶ 9, Ex. B; Dkt. No. 94-1 ¶ 8.  On December 28, 2017, Mr. Carlson

7    emailed Mr. Clapper and asked, "When will we be receiving our updates on the payment of our

8    overdue payments and the corresponding wire transfer?"  Dkt. No. 94-1 ¶ 10; Dkt. No. 93-3 ¶ 9,

9    Ex. B.  Mr. Clapper responded, "Confirmation last night/morning PDT.  Also have identified and

10   warmed up friends/colleagues co-invested with in past deals and negotiating now on [ScanX]."

11   Dkt. No. 94-1 ¶ 10; Dkt. No. 93-3 ¶ 9, Ex. B.

12           On January 18, 2018, Mr. Clapper sent Mr. Carlson an email stating that the Chinese

13   investment funds had "cleared the local paperwork requirement," which Mr. Carlson interpreted as

14   new funding from additional sources.  Dkt. No. 94-1 ¶ 13; Dkt. No. 93-3 ¶ 10, Ex. D.  In response,

15   Mr. Carlson asked, "How much is the total investment and when will we have the corresponding

16   payment breakout?"  Dkt. No. 93-3, Ex. D.  Mr. Clapper responded, "Lump sum of $100k initially

17   followed by more in $50k increments."  *Id.*  Mr. Carlson then asked, "The entire team . . . is

18   running on fumes, what is the dispersement[sic] plan?"  Dkt. No. 93-3, Ex. E.  Mr. Clapper

19   replied, "I'm counting on closing more than the $100k.  Need to get Reza and Steve comfortable

20   and bring Alejandra aboard to help Reza get his first listeria product field ready as well as take

21   down a percentage of outstanding debt for you and law firms."  *Id.*

22           On January 30, 2018, Messrs. Clapper and Carlson had a telephone conversation, the

23   details of which are disputed.  Dkt. No. 93-3 ¶ 11; Dkt. No. 94-1 ¶ 16.  According to Mr. Carlson,

24   Mr. Clapper made promises of payment.  Dkt. No. 93-3 ¶ 11.  Following their phone conversation,

25   Mr. Carlson sent Mr. Clapper an email to confirm what he believed they had agreed upon:

26   "Confirming our discussion, that the short term plan is to pay me $100K by this Friday and as a

27   minimum I will receive a minimum payment of $33K.  (The $100K Rocky investment times 1/3)."

28   Dkt. No. 93-3 ¶ 11, Ex. F.  Mr. Clapper responded to Mr. Carlson's email: "Get to work and stop

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1   screwing around[.]" *Id.*, Exs. F-G.

2       Carlson Produce ceased performing on February 2, 2018, when it concluded that ScanX

3   would not fulfill its obligations under the Services Agreement. *Id.* ¶ 13.

4       **B.      Procedural Background**

5       Mr. Carlson and Carlson Produce filed this action on November 28, 2018 asserting the

6   following claims: (1) breach of contract, (2) breach of the duty of good faith and fair dealing, (3)

7   fraud, (4) promissory estoppel, and (5) quantum meruit/unjust enrichment. Dkt. No. 1. Following

8   two motions to dismiss (Dkt. Nos. 26, 45) and the Court's order granting default judgment to

9   Carlson Produce as to the breach of contract claim against ScanX (Dkt. No. 73), the only

10  remaining claim at issue is Carlson Produce's claim for fraud against ScanX and Mr. Clapper.

11      Carlson Produce now moves for summary judgment on this remaining fraud claim against

12  both defendants. Dkt. No. 93. Mr. Clapper cross-moves for summary judgment. Dkt. Nos. 94,

13  94-4.

14  **II.    LEGAL STANDARD**

15      A party may move for summary judgment on a "claim or defense" or "part of . . . a claim

16  or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when, after adequate

17  discovery, there is no genuine issue as to any material facts and the moving party is entitled to

18  judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

19  Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*,

20  477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient

21  evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

22      A party seeking summary judgment bears the initial burden of informing the court of the

23  basis for its motion and of identifying those portions of the pleadings and discovery responses that

24  demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Where the

25  moving party will have the burden of proof at trial, it must affirmatively demonstrate that no

26  reasonable trier of fact could find other than for the moving party. *S. Calif. Gas. Co. v. City of*

27  *Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

28      On an issue where the nonmoving party will bear the burden of proof at trial, the moving

4

party may discharge its burden of production either (1) by "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery, by "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. at 324–25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Anderson*, 477 U.S. at 254. "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## III.    OBJECTIONS TO EVIDENCE

Before considering the merits of the parties' cross-motions for summary judgment, the Court first addresses the parties' objections to evidence. Dkt. Nos. 94-5, 94-6, 94-7, 95-3; Dkt. No. 95 at 4–6. In addition, the Court considers whether Carlson Produce's requests for admission to Mr. Clapper are properly deemed admitted. Dkt. No. 94 at 9.

### A.    Mr. Clapper's Evidentiary Objections

Mr. Clapper separately filed objections to portions of the declarations of Messrs. Carlson, Hiduke, and Grimm. Dkt. Nos. 94-5, 94-6, 95-7. These objections do not comply with Civil Local Rule 7-3(a), which requires an opposing party to include evidentiary and procedural objections in its opposition brief. Accordingly, the Court does not consider Mr. Clapper's separately filed objections. *See Crandall v. Starbucks Corp.*, 249 F. Supp. 3d 1087, 1103–04

United States District Court
Northern District of California

(N.D. Cal. 2017).  Correspondingly, the Court does not consider Carlson Produce's responses to those separately filed objections.  *See* Dkt. Nos. 95-4, 95-5, 95-6.

Mr. Clapper also separately filed objections to paragraphs 3 and 4 of Mr. Carlson's supplemental declaration submitted in support of Carlson Produce's reply brief.  Dkt. No. 96. These objections are permitted under Civil Local Rule 7-3(d).  Mr. Clapper argues that paragraphs 3 and 4 of Mr. Carlson's supplemental declaration contain new allegations and evidence about an allegedly fraudulent misrepresentation made in July 2017 that Carlson Produce did not plead in its complaint or raise in its opening brief.  *Id.* at 1–2.  Carlson Produce does not contest Mr. Clapper's characterization of these portions of the declaration.  The Court sustains Mr. Clapper's objection. "The district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).  Also, "arguments raised for the first time in a reply brief are waived." *Turtle Island Restoration Network v. U.S. Dep't of Com.*, 672 F.3d 1160, 1166 n.8 (9th Cir. 2012) (quoting *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010)).  Accordingly, the Court does not consider paragraphs 3 and 4 of Mr. Carlson's supplemental declaration.

### B.    Carlson Produce's Evidentiary Objections

Carlson Produce separately filed objections to Mr. Clapper's declaration submitted in support of his opposition to Carlson Produce's summary judgment motion and in support of his own cross-motion.  *See* Dkt. No. 95-3.  These objections do not comply with Civil Local Rule 7-3(a), and the Court does not consider Carlson Produce's objections for the same reasons it does not consider Mr. Clapper's separately filed objections.  *See supra* Section III.A.  However, for the reasons described further below, the Court does not consider Mr. Clapper's declaration.  *See infra* Section III.D.

### C.    Carlson Produce's Requests for Admission

Carlson Produce's motion for summary judgment relies heavily on requests for admission to which Mr. Clapper never responded and which, it says, should now be deemed admitted under Rule 36(a)(3).  Dkt. No. 93 at 4 n.1.  Rule 36(a)(3) provides that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or

United States District Court
Northern District of California

1    its attorney." Mr. Clapper argues that because Carlson Produce's requests were not timely served,

2    they cannot be deemed admitted under Rule 36. Dkt. No. 94 at 8, 9.

3         The Court agrees with Mr. Clapper. Carlson Produce served its requests for admissions by

4    mail on September 9, 2019. Dkt. No. 93-1 ¶ 4. Under Rule 6(d), service of those requests by mail

5    added three days to the 30-day response period. Civil Local Rule 37-3 provides that the

6    "discovery cut-off" is "the date by which all responses to written discovery are due . . . . Discovery

7    requests that call for responses or depositions after the applicable discovery cut-off are not

8    enforceable, except by order of the Court for good cause shown." Because the fact discovery cut-

9    off date was October 9, 2019, the mailed requests would have been timely served only if Carlson

10   Produce had served them by September 6, 2019. Carlson Produce did not seek leave of Court to

11   serve belated requests for admissions.

12        Accordingly, the Court does not deem the requests admitted for purposes of the parties'

13   cross-motions for summary judgment.

14   **D.    Carlson Produce's Rule 37 Objection to Mr. Clapper's Declaration**

15        In its reply brief in support of summary judgment and again in its combined Rule 56(d)

16   motion and opposition to Mr. Clapper's cross-motion for summary judgment, Carlson Produce

17   asks the Court to exclude the evidence Mr. Clapper offers in his declaration, as provided in Rule

18   37(d)(1)(A)(ii), because Mr. Clapper failed to respond to Carlson Produce's discovery requests.

19   *See* Dkt. No. 95 at 4–5; Dkt. No. 98 at 11–12. Mr. Clapper responds that Carlson Produce's

20   motion to exclude is untimely under Civil Local Rule 7-8(c) and Civil Local Rule 7-2(a) and

21   therefore should be denied.

22        Federal Rule of Civil Procedure 37(d) provides that, on motion, a court may order

23   sanctions if a party fails (i) to appear for that party's deposition after being served with proper

24   notice; or (ii) to serve its answers, objections, or written response after being properly served with

25   interrogatories or a request for inspection. The remedies available under Rule 37(d) include: (i)

26   directing that the matters embraced in the order or other designated facts be taken as established

27   for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party

28   from supporting or opposing designated claims or defenses, or from introducing designated

matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; or (vi) rendering a default judgment against the disobedient party.  Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi). Civil Local Rule 7-8(c) requires a party to move "as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate," and Civil Local Rule 7-2(a) requires motions to be noticed and served not less than 35 days before the hearing date.

Mr. Clapper argues that because fact discovery closed on October 9, 2019, Carlson Produce knew of the circumstances that would support its present request for exclusion of evidence at least as of that date but delayed seeking relief under Rule 37 until July 6, 2020.  Mr. Clapper further argues that because a request for sanctions must be made by properly noticed motion, Carlson Produce's request is also procedurally improper.  Dkt. No. 100 at 1–2.

Mr. Clapper's arguments are not persuasive.  While Carlson Produce could have moved for exclusion of evidence under Rule 37(d)(1)(A)(ii) as of the close of discovery, it likely did not expect Mr. Clapper to attempt to rely on evidence he had not produced during discovery, given his failure to defend this case generally.  Even after he retained new counsel in June 2020, Mr. Clapper did not seek to reopen discovery or take any other action to remedy his prior failure to respond to Carlson Produce's requests.  While Mr. Clapper is correct that ordinarily a motion for sanctions must be filed and noticed pursuant to Civil Local Rule 7-2(a), Mr. Clapper had an opportunity to—and did—respond to Carlson Produce's motion, and the Court has fully considered his response.  In these circumstances, the Court finds that Carlson Produce's motion to exclude the evidence Mr. Clapper asks the Court to consider on summary judgment is not untimely.

Here, Mr. Clapper does not dispute that he refused to respond to Carlson Produce's discovery requests or to its counsel's efforts to obtain his cooperation in discovery, and he does not dispute that his declaration addresses documents and topics that fall within the scope of those discovery requests.  *See* Dkt. No. 100.  He provides no explanation for his discovery misconduct. *See id.*  On this record, the Court finds that Carlson Produce timely served Mr. Clapper with requests for production and noticed his deposition, and that despite Carlson Produce's good faith

United States District Court
Northern District of California

United States District Court
Northern District of California

attempt to confer with him regarding responses to those discovery requests, Mr. Clapper did not respond and provided no justification for his failure to respond. *See id.*; Dkt. No. 102 ¶¶ 4-5, Exs. A-C. In these circumstances, it would be unjust to permit Mr. Clapper to rely on such evidence to create a dispute of material fact to avoid summary judgment. *See Whelan v. Potter*, No. CIV S-09-3606 KJM-KJN, 2012 WL 3535869, at *7 (E.D. Cal. Aug. 15, 2012) (declining to consider plaintiff's exhibits offered in opposition to summary judgment as sanction under Rule 37(d)(1)(A)(ii), because plaintiff's "complete failures to respond to discovery . . . prejudiced defendant's ability to engage in orderly, informed summary judgment practice"); *see also Gaines v. Cal. Dep't of Corr.*,  No. 1:15-cv-00587-LJO-SAB (PC), 2019 WL 4243230, at *5–6 (E.D. Cal. Sept. 6, 2019) (recommending exclusion of declarations submitted in support of summary judgment from witnesses that plaintiff did not previously disclose in his interrogatory responses), *report and recommendation adopted*, 2020 WL 220994 (E.D. Cal. Jan. 15, 2020); *Dolzhenico v. City of Los Angeles, Cal.*, No. CV 15–4581 AB (SSx), 2016 WL 10587935 (C.D. Cal. Oct. 28, 2016) (recommending plaintiffs be categorically precluded from offering any declarations in connection with any future motion or any testimony at trial on any substantive issue plaintiffs failed to answer at their depositions or in written discovery requests), *report and recommendation adopted*, 2017 WL 5643140 (C.D. Cal. Jan. 30, 2017).  The Court therefore will not consider Mr. Clapper's declaration to the extent it attempts to contradict admissible evidence on which Carlson Produce relies in its motion for summary judgment.

## IV.    PLAINTIFF CARLSON PRODUCE'S MOTION FOR SUMMARY JUDGMENT

Carlson Produce moves for summary judgment on the remaining fraud claim against ScanX and Mr. Clapper.  Dkt. No. 93 at 4.  Mr. Clapper opposes the motion.  Dkt. No. 94.  He appears to suggest that the only remaining unresolved fraud claim is against him alone because the Court declined to enter default judgment against ScanX.  *See id.* at 1.  That suggestion is incorrect.  The Court's denial of a default judgment on the fraud claim against ScanX did not dispose of that claim.  Because Carlson Produce's fraud claim against both defendants arises out of the same set of facts, the Court first considers the claim against Mr. Clapper and then turns to the claim against ScanX.

### A.   Fraud Claim against Rock Clapper

Carlson Produce's first amended complaint asserts a claim for promissory fraud.  Dkt. No. 27 ¶ 47 (quoting definition of promissory fraud from California Civil Code § 1710(4)). "Promissory fraud" is a subspecies of fraud and deceit.  "A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud. . . . An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (citations omitted).  The elements of promissory fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Id.* (internal quotations omitted).

Carlson Produce does not claim that Mr. Clapper made false representations to induce it to enter into the Services Agreement—all of the alleged misrepresentations occurred after the parties signed the Services Agreement.  *See* Dkt. No. 93 at 9–12.  Rather, Carlson Produce argues that Mr. Clapper made misrepresentations in order to secure Carlson Produce's continued performance of the Service Agreement when Mr. Clapper and ScanX intended not to pay for that performance. *Id.* at 15.

Carlson Produce has not shown that it is entitled to summary on its promissory fraud claim against Mr. Clapper, because genuine disputes of material fact exist concerning the elements of misrepresentation, scienter, and intent to defraud.  With respect to the misrepresentation element, Carlson Produce contends that Mr. Clapper falsely represented that ScanX would pay the outstanding amounts owed under the terms of the Services Agreement.  Carlson Produce states that on December 22, 2017, Mr. Clapper sent an email in which he "represented that the investor would 'wire funds from hong kong [sic] to our bank in the U.S.'"  Dkt. No. 93-3 ¶ 9.  However, the email in question actually states that the investment manager in China "needs to go in physically to his bank so they can wire funds from hong kong [sic] to our bank in the U.S. Wed., thur. at the latest."  *Id.*, Ex. B.  This statement is ambiguous.  A statement that the investment manager needs to physically visit a bank to wire funds might be construed as an implicit statement

1    that ScanX would pay Carlson Produce something, but the Court cannot conclude as a matter of

2    law that it must be characterized as an express promise to do so.  Similarly, Carlson Produce

3    contends that in response to Mr. Carlson's inquiry as to when ScanX team members would get an

4    update on their overdue payments and the corresponding wire transfer from China, Mr. Clapper

5    responded on December 28, 2017: "Confirmation last night/morning PDT."  *Id.* ¶ 9, Ex. C.  This

6    statement is also ambiguous.  It is unclear exactly what is being confirmed, particularly in view of

7    the screenshot attached to the email of Mr. Clapper's text message exchange with the Chinese

8    investment manager, who said, "I think we done with the term, I just need to go eastwest bank

9    Shenzhen office to finish the account."  *Id.*, Ex. C.  Mr. Clapper's December 28, 2017 email says

10   nothing explicit about any payment to Carlson Produce or anyone else, and the Court cannot

11   conclude as a matter of law that it must be construed as a promise that the Chinese investment

12   money would be used to pay Carlson Produce, as Mr. Carlson asserts.  *Id.* ¶ 9.

13           With respect to the scienter element, Carlson Produce points to no evidence, apart from the

14   emails discussed above, that it contends reflects that Mr. Clapper knew his statements about

15   forthcoming Chinese investments or expected payments to Carlson Produce were false when

16   made.  No such inference can be drawn, as a matter of law, from these emails.

17           With respect to the fraudulent intent element, Carlson Produce relies heavily on purported

18   admissions, based on requests for admissions to which defendants did not respond.  Dkt. No. 93 at

19   14.  For the reasons described above, the Court does not deem those requests admitted and does

20   not consider them.  *See supra* Section III.C.  Carlson Produce also relies on his own allegations of

21   fraudulent intent in the amended complaint.  Dkt. No. 93 at 15 (citing Dkt. No. 27).  These

22   allegations were not admitted by defendants and are not evidence.  *Briggs v. Blomkamp*, 70 F.

23   Supp. 3d 1155, 1166 (N.D. Cal. 2014) ("[A]llegations in a complaint are not evidence that can be

24   used to support or oppose summary judgment.").  Carlson Produce also cites defendants'

25   nonperformance of the Services Agreement as evidence of Mr. Clapper's fraudulent intent.  But as

26   Carlson Produce acknowledges, "something more than nonperformance is required to prove the

27   defendant's intent not to perform his promise."  Dkt. No. 93 at 14 (quoting *Las Palmas Assocs. v.*

28   *Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1239 (1991)) (internal quotation marks omitted).

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1    Finally, Carlson Produce argues that Mr. Clapper made a statement that induced it to continue

2    providing services under the Services Agreement when it otherwise could have ceased because its

3    performance was excused by ScanX's non-performance.  *Id.* at 12–13; Dkt. No. 95 at 8.  Citing

4    the parties' January 2018 email exchange—in which Mr. Carlson sought to confirm that Mr.

5    Clapper agreed to pay at least $33,000 by a specific date, and to which Mr. Clapper responded,

6    "Get to work and quit screwing around"—Carlson Produce says Mr. Clapper intended "to induce

7    [it] to continue to perform under the Services Agreement" and that Mr. Clapper "did not intend to

8    pay the $33,000 (or any money)."  Dkt. No. 95 at 15.  Even assuming this is a plausible reading of

9    the email exchange, it is not the only possible reading, and the Court cannot conclude that Carlson

10   Produce's evidence shows fraudulent intent as a matter of law.

11       Accordingly, the Court denies Carlson Produce's summary judgment motion as to Mr.

12   Clapper.

13       **B.    Fraud Claim against ScanX**

14       After defense counsel moved to withdraw on May 27, 2019, the Court stayed the action to

15   permit time for ScanX to obtain new counsel.  Dkt. No. 56.  ScanX did not obtain new counsel and

16   has not subsequently defended this action, despite having been warned by its former counsel and

17   the Court that it may not proceed pro se.  *Id.*; Dkt. No. 59 (citing Civ. L.R. 3-9(b); *Bright Smart*

18   *Corp. v. Google, Inc.*, No. 5:15-cv-03962-BLF, 2016 WL 1070667, at *2 (N.D. Cal. Mar. 18,

19   2016)).  Carlson Produce obtained an entry of default against ScanX on the breach of contract

20   claim on August 5, 2019.  Dkt. No. 61.  As noted, ScanX did not respond to Carlson Produce's

21   summary judgment motion.

22       A district court may not grant a motion for summary judgment solely because the opposing

23   party has failed to file an opposition.  *Cristobal v. Siegel*, 26 F.3d 1488, 1494–95 & n. 4 (9th Cir.

24   1994) (unopposed motion may be granted only after court determines that there are no material

25   issues of fact).  The court may, however, grant an unopposed motion for summary judgment if the

26   movant's papers are themselves sufficient to support the motion and do not on their face reveal a

27   genuine issue of material fact.  *See Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026,

28   1029 (9th Cir. 2001); *see also N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d

552, 558 (5th Cir. 2008) (if no factual showing is made in opposition to a motion for summary judgment, the district court is not required to search the record sua sponte for a triable issue of fact).

Carlson Produce's fraud claim against ScanX is based on the same conduct as its fraud claim against Mr. Clapper. Dkt. No. 93 at 9–16. The Court denies Carlson Produce's motion for summary judgment as to ScanX for the same reasons it denies summary judgment as to Mr. Clapper. *See supra* Section IV.A.

## V.   DEFENDANT ROCK CLAPPER'S CROSS-MOTION FOR SUMMARY JUDGMENT

In addition to opposing Carlson Produce's summary judgment, Mr. Clapper cross-moves for summary judgment in his favor. Dkt. No. 94-4. He argues that Carlson Produce has not provided any evidence of intent to defraud beyond nonpayment, and that his declaration submitted in opposition to Carlson Produce's summary judgment motion and in support of his cross-motion is evidence that he never possessed an intent to defraud. *Id.* at 3–4. In response, Carlson Produce requests the Court deny the cross-motion under Federal Rule of Civil Procedure 56(d). Dkt. No. 98.

As explained above, the Court does not consider Mr. Clapper's declaration to the extent it contradicts Carlson Produce's evidence. *See supra* Section III.D. Although Mr. Clapper does not have the burden of proof at trial and Carlson Produce's evidence of fraud is weak, the Court finds that the admissible evidence is not sufficient to support a finding that Mr. Clapper is entitled to summary judgment in his favor as a matter of law.

Accordingly, the Court denies Mr. Clapper's cross-motion. The Court also denies Carlson Produce's Rule 56(d) motion as moot.

## VI.   APPLICATION OF THE ECONOMIC LOSS RULE

At the hearing on the parties' cross-motions for summary judgment, the Court requested supplemental briefing from the parties on the question of whether the economic loss rule bars Carlson Produce's remaining fraud claim against Mr. Clapper and ScanX. Dkt. No. 104. Because this is a diversity action, California substantive law—including the economic loss rule—applies.

13

United States District Court
Northern District of California

1  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal

2  courts sitting in diversity apply state substantive law and federal procedural law."); *see also City*

3  *of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1050 (9th Cir. 2014) ("The substantive law

4  governing both the economic loss rule and the statute of limitations in this case is California

5  law.").

6  According to the economic loss rule, "no tort cause of action will lie where the breach of

7  duty is nothing more than a violation of a promise which undermines the expectations of the

8  parties to an agreement." *Oracle USA, Inc. v. XL Global Servs., Inc.*, C 09–00537 MHP, 2009

9  WL 2084154, at *4 (N.D. Cal. July 13, 2009); *see also Robinson Helicopter Co., Inc. v. Dana*

10  *Corp.*, 34 Cal. 4th 979, 988 (2004) ("[The economic loss rule] requires a purchaser to recover in

11  contract for purely economic loss due to disappointed expectations, unless he can demonstrate

12  harm above and beyond a broken contractual promise."). The purpose of the rule is to "prevent[ ]

13  the law of contract and the law of tort from dissolving one into the other." *Robinson Helicopter*,

14  34 Cal. 4th at 988 (internal quotation marks and citation omitted).

15  Mr. Clapper contends that the economic loss rule bars Carlson Produce's claims for

16  promissory fraud, that none of defendants' representations go beyond a promise to perform under

17  the Services Agreement, and that Carlson Produce has not suffered any harm beyond defendants'

18  nonperformance. Dkt. No. 108 at 8–10. Carlson Produce argues that an exception to the

19  economic loss rule applies here because it was fraudulently induced to continue performance of

20  the Services Agreement. Dkt. No. 107 at 5–8.

21  Courts have recognized an exception to the economic loss rule where the conduct "violates

22  a duty independent of the contract arising from principles of tort law." *J'Aire Corp. v. Gregory*,

23  24 Cal. 3d 799, 804 (1979); *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999). The California

24  Supreme Court has recognized such an independent duty (outside the insurance context) only (1)

25  where a defendant's actions that constituted breach of contract also caused physical injury; (2) for

26  wrongful discharge in violation of fundamental public policy; or (3) where the plaintiff was

27  fraudulently induced to enter a contract. *Erlich*, 21 Cal. 4th at 551–52; *see also Oracle USA*, 2009

28  WL 2084154, at *4 ("Exceptions have been permitted only where: a breach of duty causes a

physical injury; the covenant of good faith and fair dealing is breached in an insurance contract; an employee was wrongfully discharged in violation of a fundamental public policy; or a contract was fraudulently induced.").  The California Supreme Court has also found an additional narrow exception where (1) the defendant committed fraud independent of the contract by falsely representing that the defendant was complying with the contract, and (2) the misrepresentations exposed the plaintiff to personal liability and members of the public to harm.  *Robinson Helicopter*, 34 Cal. 4th at 990.

Here, Carlson Produce concedes that it cannot succeed on a claim that it was fraudulently induced to enter into the Services Agreement.  Dkt. No. 107 at 7 ("Carlson Produce has not alleged that it was fraudulently induced to enter the original Services Agreement.").  Instead, Carlson Produce contends that defendants fraudulently induced it to continue performance of the Services Agreement.  *Id.* ("[T]he only basis on which Carlson Produce's fraud claims can potentially survive the economic loss rule is if the fraudulent promises made subsequent to the formation of the Services Agreement were themselves each new contracts that were fraudulently induced by Mr. Clapper.").  Specifically, Carlson Produce argues that Mr. Clapper's January 18, 2018 email communication, discussed above, "induced Carlson Produce to continue providing services by promising to pay $33,000 when it received $100,000 on a date certain," and that "[a]s a result of this separate promise to pay, in an amount that differed from the originally contracted amount, Carlson Produce agreed to continue providing services to Defendants."  *Id.*  This argument is unavailing.

First, Carlson Produce provides no evidence to support its contention that the parties entered into a new contract.  It cites only to allegations in the first amended complaint, which are not evidence.  Mr. Carlson attests that "[i]n late January of 2018, Mr. Clapper, on behalf of ScanX, provided further promises of payment in a telephone conversation with me," and that in response, Mr. Carlson sent an email to Mr. Clapper, stating, "Confirming our discussion, that the short term plan is to pay me $100K by this Friday and as a minimum I will receive a minimum payment of $33K. (The $100K Rocky investment times 1/3)."  Dkt. No. 93-3 ¶ 11, Ex. F.  However, Mr. Clapper's immediate response simply stated, "Get to work and quite screwing around"—hardly

15

United States District Court
Northern District of California

1    evidence of a meeting of the minds resulting in a new, valid contract. *Id.*, Ex. G. "[I]f the parties

2    did not enter a new or modified contract with different obligations, [Carlson Produce] was simply

3    induced to continue performing its then-existing contractual obligations, and the fraudulent

4    inducement exception would not apply." *R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-

5    00716-LHK, 2017 WL 1164296, at *8 (N.D. Cal. Mar. 29, 2017) (quoting *Foster Poultry Farms*

6    *v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 992–93 (E.D. Cal. 2012)).

7        Second, even assuming Mr. Clapper had promised to pay Carlson Produce, such a promise

8    was not conduct "independent from the various promises made by the parties in the course of their

9    contractual relationship." *Oracle USA*, 2009 WL 2084154, at *4. Carlson Produce concedes that

10   it has suffered no additional harm beyond not receiving payment under the Services Agreement,

11   and any "new contract" required Carlson Produce to do nothing more than continue its

12   performance as it was already obligated to do under the Services Agreement. Carlson Produce's

13   fraud claim is essentially a claim that ScanX and Mr. Clapper breached the Services Agreement in

14   bad faith. To permit such a claim to proceed would "collapse the carefully-guarded distinction

15   between contract and tort law." *Id.* at *7; *see also JMP Securities LLP v. Altair Nanotechs. Inc.*,

16   880 F. Supp. 2d 1029, 1043–44 (N.D. Cal. 2012).

17       This case is distinguishable from the two cases—*R Power Biofuels, LLC v. Chemex LLC*

18   and *Lazar v. Superior Court*—on which Carlson Produce relies. Dkt. No. 93 at 17; Dkt. No. 109

19   at 2. In *R Power Biofuels*, the plaintiff argued that the defendant fraudulently induced it to enter

20   into a new contract to provide refurbished equipment, separate from the parties' original contracts

21   for new equipment. 2017 WL 1164296, at *8. Because the original contracts were susceptible to

22   more than one reasonable interpretation regarding the provision of refurbished equipment, and it

23   was therefore unclear whether the second contract was actually a new contract, the court denied

24   defendant's motion to dismiss based on the economic loss rule. *Id.* at *8–10. Here, it is

25   undisputed that any purported new contract concerned the *same performance* specified in the

26   original Services Agreement.

27       In *Lazar*, the plaintiff alleged that he was lured by false representations concerning a new

28   job, causing him to leave his previous employment and to relocate from New York to California.

The *Lazar* plaintiff did not contend, as Carlson Produce does here, that he was fraudulently induced to continue performing an existing contract, but rather that he was fraudulently induced by false promises to enter into an employment contract in the first instance. 12 Cal. 4th at 636, 638–39, 648–49.  Moreover, the *Lazar* plaintiff suffered injuries beyond the defendant's nonperformance: not only did he lose income and benefits in reliance on the defendant's representations, he also "lost contact with the New York employment market so that reemployment there is difficult or impossible" and was "burdened with payments on Southern California real estate he can no longer afford."  *Id.* at 638.  Carlson Produce has shown no evidence of any similar tort injury resulting from defendants' acts beyond losing the benefit of the bargain under the Services Agreement.

Accordingly, the Court concludes that the economic loss rule bars Carlson Produce's remaining claim for fraud against Mr. Clapper and ScanX and dismisses the claim on that basis.

## VII.   CONCLUSION

For the foregoing reasons, the Court denies the parties' cross-motions for summary judgment.  However, because the economic loss rule bars Carlson Produce's remaining claim for fraud against both Mr. Clapper and ScanX, the Court dismisses that claim with prejudice.

**IT IS SO ORDERED.**

Dated: January 28, 2021

VIRGINIA K. DEMARCHI
United States Magistrate Judge

United States District Court
Northern District of California

17