UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DISTRICT

| | |
|---|---|
| CARLSON PRODUCE, LLC, <br> Plaintiff, <br> v. <br> ROCK CLAPPER, et al., <br> Defendants. | Case No. 18-cv-07195-VKD <br><br> **ORDER GRANTING MOTION TO AMEND JUDGMENT** <br> Re: Dkt. No. 116 |

Plaintiff and judgment-creditor Carlson Produce, LLC ("Carlson Produce") filed a motion to amend the judgment entered against defendant ScanX, Inc. ("ScanX") to add Rock Clapper as an additional judgment debtor. Dkt. No. 116. This motion was served on Mr. Clapper on November 8, 2021 to his last known address, but he did not respond. Dkt. No. 119. The Court vacated the hearing on the motion and deemed the matter submitted on the papers without oral argument. Dkt. No. 120. For the reasons discussed below, the Court grants the motion to amend the judgment to add Mr. Clapper as an additional judgment debtor on the theory that he is the alter ego of ScanX.

**I.    BACKGROUND**

Mr. Carlson and Carlson Produce filed the underlying action on November 28, 2018 asserting the following claims against both Mr. Clapper and ScanX: (1) breach of contract, (2) breach of the duty of good faith and fair dealing, (3) fraud, (4) promissory estoppel, and (5) quantum meruit/unjust enrichment. Dkt. No. 1. After two motions to dismiss (Dkt. Nos. 26, 45), defendants' attorney withdrew, citing defendants' breach of their fee agreement. Dkt. No. 44. After advising Mr. Clapper that ScanX could not represent itself *pro se* (Dkt. No. 59), several

1  months of delay, and a stay of the action (Dkt. No. 56) for Mr. Clapper to find replacement

2  counsel, Carlson Produce filed a motion for default judgment against ScanX on the breach of

3  contract claim. Dkt No. 66. The Court granted default judgment to Carlson Produce on that

4  claim. Dkt. No. 73. Following this default judgment, only Carlson Produce's fraud claim against

5  ScanX and Mr. Clapper remained. The parties cross-moved for summary judgment on the

6  remaining claim. Dkt. Nos. 93, 94. After inviting supplemental briefing on application of the

7  economic loss rule, the Court dismissed the fraud claim as barred by that rule. Dkt. No. 110.

8       The Court entered judgment against ScanX for breach of contract on January 28, 2021 in

9  the amount of $487,128.36. Dkt. Nos. 73, 111. To date, the judgment has not been satisfied. Dkt.

10  No. 113. In June of 2021, the Court granted Carlson Produce's motion to reopen the case to

11  obtain post-judgment discovery. Dkt. No. 114. Carlson Produce now contends that the judgment

12  should be amended to add Mr. Clapper as a judgment-debtor because he is the alter ego of ScanX.

13  Dkt. No. 116.

## II.  LEGAL STANDARD

15       Rule 69(a) of the Federal Rules of Civil Procedure governs execution of judgments. That

16  rule "empowers federal courts to rely on state law to add judgment-debtors." *In re Levander*, 180

17  F.3d 1114, 1120-21 (9th Cir. 1999). *Id.*

18       The applicable state law, California Code of Civil Procedure § 187, grants its courts "all

19  the means necessary to carry [their jurisdiction] into effect." Cal. C.C.P. § 187. California has

20  interpreted Cal. C.C.P. § 187 as giving its courts the power to amend a judgment to add non-party

21  alter egos as judgment debtors when two conditions are met. *See, e.g.*, *Misik v. D'Arco*, 197 Cal.

22  App. 4th 1065, 1073 (2011). A Cal. C.C.P. § 187 amendment requires a plaintiff to prove, by a

23  preponderance of the evidence, "(1) that the new party [is] the alter ego of the old party, and (2)

24  that the new party had controlled the litigation, thereby having had the opportunity to litigate, in

25  order to satisfy due process concerns." *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394

26  F.3d 1143, 1148 (9th Cir. 2004) (quoting *In re Levander*, 180 F.3d at 1121); *Wollersheim v.*

27  *Church of Scientology*, 69 Cal. App. 4th, 1012, 1013 (1999) (discussing evidentiary standard).

28  "Amending a judgment to add an alter ego of an original judgment debtor is an equitable

1  procedure based on the theory that the court is . . . merely inserting the correct name of the real
2  defendant." *Highland Springs Conf. & Training Ctr. v. City of Banning*, 244 Cal. App. 4th 267,
3  280 (2016) (internal quotations omitted).  In the interest of justice, California courts encourage
4  amendments that aid the execution of judgments.  *Misik*, 197 Cal. App. 4th at 1073.

A court is not required to hold an evidentiary hearing on a motion to amend the judgment in these circumstances, as Cal. C.C.P. § 187 contemplates amendment of a judgment by noticed motion.  *See Wells Fargo Bank, N.A. v. Weinberg*, 227 Cal. App. 4th 1, 9 (2014); *Highland Springs Conf. & Training Ctr.*, 244 Cal. App. 4th at 280.  California allows motions to add alter-ego judgment debtors to be filed within a reasonable period of time after entry of judgment. *Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 421 (9th Cir. 1998).

## III.  REQUEST FOR JUDICIAL NOTICE

Carlson Produce asks the Court to take judicial notice of several records related to business entities connected with Mr. Clapper, a filing in a California state case, and prior filings in this case in support of its motion.  Dkt. No. 118.  As Mr. Clapper did not respond to this motion, he has not opposed the request for judicial notice.

A court may take judicial notice of a fact "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Courts may take judicial notice of matters of public record, including business records retrieved from the California Secretary of State and records of federal or state courts.  *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 999, 1001 (9th Cir. 2018); *see also Reyn's Pasta Bella, LLC v. Visa USA*, Inc. 442 F. 3d 741 (9th Cir. 2006) (court records); *Gerritsen v. Warner Brothers Entertainment Inc.*, 112 F. Supp. 3d 1011, 1033-1034 (C.D. Cal. 2015) (secretary of state records).  But while a court may take notice of public records, it may not take notice of disputed facts stated in those records.  *Khoja*, 899 F.3d at 999 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

Carlson Produce asks the Court to take judicial notice of business records posted on the California Secretary of State's website.  Dkt. No. 118, Exs. 1-8.  In addition, Carlson Produce asks the Court to take judicial notice of a case management statement in *James v. Clapper, et al.*, a case

1  filed against Mr. Clapper in Santa Clara County Superior Court. *Id.*, Ex. 10. These documents are
2  matters of public record from sources whose accuracy cannot reasonably be questioned.
3  Accordingly, the Court takes judicial notice of the documents filed at Dkt. No. 118, Exs. 1-8 and
4  10. The Court need not take notice of prior filings in this case, as those filings are already part of
5  the record.

## IV. DISCUSSION

### A. Rock Clapper Is the Alter Ego of ScanX

An individual is an alter ego of a corporation under California law when two factors are met: "(1) such a unity of interest and ownership exists that the personalities of [a] corporation and [an] individual are no longer separate, and (2) an inequitable result will follow if the acts are treated as those of the corporation alone." *RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 545-46 (9th Cir. 1985) (citing *Automotriz del Golfo de California S.A. de C.V. v. Resnick*, 47 Cal. 2d 792, 795 (1957); *see also Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677 (9th Cir. 2017). "The injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when corporate separateness is illusory." *Katzir's Floor*, 394 F.3d at 1149 (citing *Tomaselli v. Transamerica Ins. Co.,* 25 Cal. App. 4th 1269, 1285 (1994)). "Whether a party is liable under an alter ego theory is a question of fact" that depends on the "circumstances of each particular case." *Leek v. Cooper,* 194 Cal. App. 4th 399, 418 (2011).

#### 1. Unity of Interest and Ownership

Many factors may inform a court's determination regarding whether there is a sufficient unity of interest and ownership to satisfy the first prong of the alter ego analysis,[1] but California

---

[1] As noted in *Bank of Montreal v. SK Foods, LLC:*

> To determine whether there is a sufficient unity of interest and ownership to support alter ego liability, courts consider a long list of factors: [1] Commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses; [2] the treatment by an individual of the assets of the corporation as his own; [3] the failure to obtain authority to issue stock or to subscribe to or issue the same; [4] the holding out by an individual that he is personally liable for the debts of the corporation; [5] the failure to maintain minutes or adequate corporate records, and the confusion of the records of the separate entities; [6] the identical equitable ownership in the two entities; [7] the identification of the equitable owners thereof with the domination and control of the two entities; [8] identification of the

4

courts consider three factors especially "critical": (1) "commingling of assets," (2) "disregard of corporate formalities," and (3) "inadequate capitalization." *See Tomaselli,* 25 Cal. App. 4th 1269, 1285 (1994); *Katzir's Floor*, 394 F.3d at 1149 (describing these factors as "critical"). "The mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law." *Katzir's Floor*, 394 F.3d at 1149 (citing *Dole Food Co. v. Patrickson,* 538 U.S. 468, 475 (2003)). Instead, factual findings as to these other critical factors are required before the corporate veil may be pierced. *See id.*

Carlson Produce presents evidence that Mr. Clapper and ScanX share a unity of interest and ownership. First, the evidence obtained by Carlson Produce through post-judgment discovery indicates that Mr. Clapper commingled assets between ScanX, himself, and other entities controlled by him. Carlson Produce points to at least nine occasions when transfers were made from a ScanX bank account to the account of NGB Markets, Inc. ("NGB") (formerly known as ProducePoint.com), another entity controlled by Mr. Clapper and registered with the state at the same address as ScanX. Dkt. No. 116 at 6-7. In some of these instances, it appears the transfers were made because funds intended for NGB were "incorrectly" wired to the ScanX account. *Id.* Others were made as "loans" from ScanX to NGB. That some of these transfers were loans is

---

directors and officers of the two entities in the responsible supervision and management; [9] sole ownership of all of the stock in a corporation by one individual or the members of a family; [10] the use of the same office or business location; [11] the employment of the same employees and/or attorney; [12] the failure to adequately capitalize a corporation; [13] the total absence of corporate assets, and undercapitalization; [14] the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation; [15] the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities; [16] the disregard of legal formalities and the failure to maintain arm's length relationships among related entities; [17] the use of the corporate entity to procure labor, services or merchandise for another person or entity; [18] the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another; [19] the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions; [20] and the formation and use of a corporation to transfer to it the existing liability of another person or entity.

476 B.R. 588, 597-98 (N.D. Cal. 2012) (citing *Zoran Corp. v. Chen,* 185 Cal. App. 4th 799 (Cal. Ct. App. 2010)).

supported by several transfers which were made from the NGB account to the ScanX account. In total, the evidence shows that Mr. Clapper caused $153,820 to be transferred from ScanX to NGB, and $38,300 to be transferred to ScanX from NGB. *Id.* at 9-10.

Mr. Clapper apparently also used funds from ScanX to pay third parties for goods or services unrelated to ScanX's business. As alleged in the amended complaint and admitted in the answer, "ScanX is in the business of developing instrumentation for the 'real time' detection of bacteria and chemicals in the food supply." Dkt. No. 27 ¶ 13; Dkt. No. 49 ¶ 13. Carlson Produce presents evidence that Mr. Clapper caused ScanX to wire $5,000 to Bow Tie Cars, LLC, a car restoration company with no apparent relationship to the business of ScanX, and that ScanX wired $5,000 to Mr. Clapper's attorney for representation in a case to which ScanX was not a party. *See* Dkt. No. 118 at 11.

Second, the evidence before the Court indicates that Mr. Clapper disregarded corporate formalities. The California Secretary of State lists ScanX's corporate status as "FTB Forfeited." Dkt. No. 118-8. As Carlson Produce notes, these records indicate that ScanX is not current on its payment of taxes to the California Franchise Tax Board, and it appears to have *never* paid taxes to the California Franchise Tax Board. Dkt. No. 116 at 11. Moreover, when Mr. Clapper and ScanX were both represented in the early part of this litigation, they shared counsel. *See Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811-812 (2010) (employment of same attorney is an indicia of an alter ego relationship). This continued when Mr. Clapper sought new counsel after his original counsel withdrew. When asked by the Court whether he would seek new counsel for ScanX, Mr. Clapper replied: "I've been searching for counsel that would fit my budget," suggesting he intended to personally fund ScanX's legal expenses. Dkt. No. 78 (in-court proceedings held March 10, 2020, FTR Time: 1:58:44 p.m). Finally, Mr. Clapper, ScanX, and each of the entities he controlled all share the same address. Dkt. No. 116 at 6. These factors indicate to the Court that few corporate formalities existed signifying a separation of the corporate identity of ScanX from Mr. Clapper's personal identity or the other entities he controls.

Third, the evidence indicates that ScanX is not and never was adequately capitalized. A corporation is adequately capitalized when it "reasonably" has funds "to enable [the corporation]

6

to operate its business and pay its debts as they mature." *Laborers Clean-Up Cont. Admin. Tr. Fund v. Uriarte Clean-Up Serv., Inc.*, 736 F.2d 516, 524 (9th Cir. 1984) (alteration in original) (hereafter "*Laborers*"). From the beginning, ScanX appears to have had only limited operating capital. Dkt. 94-1 ¶ 5, 7. From the limited income ScanX did receive, Mr. Clapper had to choose which of his "team" would receive "partial payments," "as cash flow requirements permitted." *Id.* at ¶ 7. These payments of ScanX's "several debts," including to Carlson Produce, were contingent upon receipt of local and foreign investment. *Id.* at ¶¶ 8, 14. Even when ScanX ultimately received investment capital, it was still unable to pay its operating expenses. *Id.* at ¶ 16.

In addition, the record reflects that ScanX entered into a four-year services agreement with Carlson Produce, pursuant to which Carlson Produce undertook responsibility for "all revenue generation processes . . . including marketing, sales, customer support, pricing, and revenue management." Dkt. No. 93-3, Ex. A at 1. In exchange for those services, ScanX agreed to pay Carlson Produce "compensation of $210,000 per year for consulting activities" plus bonuses, stock options, and expenses. *Id.* Payment for the services provided was due "at the end of each 30 day period." *Id.* In other words, Carlson Produce appears to have undertaken responsibility for core sales, marketing, and revenue management functions, the costs of which are typically accounted for as operating expenses of a company. *See* Jae K. Shim, et al., *Dictionary of Accounting Terms* 343 (6th ed. 2014) (defining "operating expenses" as "costs associated with the selling and administrative activities of the company" which occur periodically over time). Due to ScanX's apparent lack of capital, Carlson Produce was compensated for only the first two months of the agreement, but it was paid nothing thereafter. Dkt. No. 27 ¶¶ 24-25.

Carlson Clapper has presented evidence sufficient to support a finding that ScanX was undercapitalized—i.e., that it lacked the capital necessary to "reasonably" pay its operating expenses and "debts as they matur[ed]." *See Laborers*, 736 F.2d at 525.

Having considered the three critical factors (commingling of assets, disregard of corporate formalities, and inadequate capitalization), the Court concludes that Carlson Produce has shown a unity of interest and ownership exists between Mr. Clapper and ScanX. This finding supports the conclusion that Mr. Clapper is the alter ego of ScanX.

7

### 2. Inequitable Result

The second prong of the alter ego analysis requires a court to consider whether it would be unjust to not recognize an alter ego relationship. "The alter ego doctrine . . . affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form." *Perfect 10, Inc.*, 847 F.3d at 677 (quoting *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523 (2000)). Insolvency or inadequate capitalization may satisfy this standard when "a corporation is so undercapitalized that it is unable to meet debts that may reasonably be expected to arise in the normal course of business." *Id.* (quoting *Laborers*, 736 F.2d at 525 (9th Cir. 1984)); *see also Automotriz*, 47 Cal. 2d 792, 797 (1957) ("If the capital is illusory or trifling compared with the business to be done and the risks of loss, this is a ground for denying the separate entity privilege.").

As discussed above, ScanX appears to have been significantly undercapitalized. As Mr. Clapper conceded, "[In January of 2018,] and at all times since, ScanX has been unable to raise sufficient revenues or investment capital to pay all of its creditors." Dkt. No. 94-1 ¶ 19. ScanX's undercapitalization and inability to reasonably meet its operating expenses and ongoing debts amounts to bad faith such that it would be inequitable for Mr. Clapper to be shielded from liability behind the corporate form. *See Perfect 10, Inc*, 847 F.3d at 678 (affirming district court's order declining to add an alter ego judgment debtor and noting that "[n]othing in the record suggests that [the corporation] was so undercapitalized that it could not meet its reasonably expected debts . . . this is not a case where a sole shareholder operated a company with little or no assets").

ScanX, Inc. has no assets by which it can satisfy the judgment against it. Dkt. No. 113-2. Here, the acts of Mr. Clapper, specifically his undercapitalization of ScanX, have led to an inequitable result: Carlson Produce cannot collect on its judgment. *See Relentless Air Racing, LLC v. Airborne Turbine Ltd. P'ship*, 222 Cal. App. 4th 811 (2013) (holding insolvency to be an inequitable result as a matter of law).

### B. Mr. Clapper Controlled the Underlying Litigation

California law requires that the proposed judgment debtor must have had the "opportunity to be heard and present defenses" in the litigation at issue. *Motores*, 51 Cal. 2d at 176. This

8

opportunity requires an "occasion to conduct" the litigation "with a diligence corresponding to the risk of personal liability." *Katzir*, 394 F.3d at 1149; *NEC*, 208 Cal. App. 3d at 781. "The real issue is not whether [the proposed judgment debtors] (or, technically, [the named defendant]) actually litigated the issue of [the named defendant's] liability, but rather whether [the proposed judgment debtors] had an opportunity to present a defense." *Dow Jones Co. v. Avenel*, 151 Cal. App. 3d 144, 150 (1984) (proposed additional judgment debtors had opportunity to litigate summary judgment of alter ego corporate defendant).

The evidence before the Court indicates that Mr. Clapper had an opportunity to litigate this case diligently as if his personal liability were at stake. Mr. Clapper was the chairman and CEO of ScanX. Dkt. No. 49 ¶ 6. Carlson Produce brought identical claims against both Mr. Clapper and ScanX. Dkt. No. 1; *cf. Katzir's Floor*, 394 F.3d at 1150 (district court erred by adding individual as alter ego defendant who was not named in litigation). After the Court granted a partial motion to dismiss, Mr. Clapper and ScanX both still faced an identical fraud claim. Dkt. No. 27 at 19-20. In both its original (Dkt. No. 1 ¶ 5) and amended complaints (Dkt. No. 27 ¶ 7), Carlson Produce alleged that Mr. Clapper was the alter ego of ScanX. Both defendants shared an attorney, before that attorney withdrew from the case. Dkt. No. 44. After a second motion to dismiss, Mr. Clapper and ScanX answered the complaint. Dkt. No. 49. Furthermore, before the Court entered default judgment against ScanX, Mr. Clapper appeared on behalf of himself and the corporation at a settlement conference. Dkt. No. 48. Carlson Produce properly served Mr. Clapper with the papers filed in this case, including the instant motion. Dkt. No. 119. Finally, as noted above, Mr. Clapper assumed responsibility to find new counsel for ScanX after its original counsel withdrew. *See Dow Jones Co. v. Avenel*, 151 Cal. App. 3d 144, 151 (Ct. App. 1984).[2]

---

[2] California courts have expressed concern over whether adding an alter ego judgment debtor after a default judgment comports with due process. *See, e.g.*, *Motores De Mexicali, S. A. v. Superior Court In & For Los Angeles Cty.*, 51 Cal. 2d 172, 173, 331 P.2d 1 (1958); *NEC*, 256 Cal. Rptr. at 444; *Wolf Metals Inc. v. Rand Pac. Sales, Inc.*, 209 Cal. Rptr. 3d 198, 202-03 (2016). However, the Ninth Circuit has remarked that "no . . . per se rule exists" against "add[ing] an alter ego to a judgment entered by default." *Cadence Design Sys., Inc. v. Viera*, 836 F. App'x 493, 495 (9th Cir. 2020).

Because these factors all strongly indicate that Mr. Clapper had many significant opportunities to litigate the underlying case, the Court finds that adding Mr. Clapper as a judgment-debtor post entry of judgment comports with due process.

## V.     CONCLUSION

Pursuant to Rule 69(a) and for the reasons explained above, the Court grants Carlson Produce's motion to amend the judgment (Dkt. No. 111).  The Court will issue a separate order amending the judgment.

**IT IS SO ORDERED.**

Dated: July 22, 2022

VIRGINIA K. DEMARCHI
United States Magistrate Judge